638 So.2d 394 (1994)
STATE of Louisiana
v.
Russell J. ALLEN.
No. 93-KA-838.
Court of Appeal of Louisiana, Fifth Circuit.
May 31, 1994.
*396 Harry J. Morel, Dist. Atty., Gerald A. Rome, Asst. Dist. Atty., Boutte, for plaintiff-appellee.
Michael G. Riehlmann, New Orleans, for defendant-appellant.
Before BOWES, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
The defendant, Russell J. Allen, was charged by bill of information with possession of over 28 grams of cocaine, in violation of LSA-R.S. 40:967 F 1(a). After a trial by jury on February 17 and 18, 1993, defendant was found guilty as charged. On July 7, 1993, the judge sentenced defendant as a second felony offender to twenty years at hard labor.
On July 9, 1993, defendant filed a motion for appeal. On October 20, 1993, court appointed counsel filed a motion to withdraw stating "[t]hat she has made a conscientious and thorough review of the record of the trial court and [has] determined that there are no non-frivolous issues to warrant an appeal herein." In accordance with the procedure set forth in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), counsel attached a brief to her motion to withdraw which set forth the procedural history and facts of the case, as well as a statement that counsel had reviewed the record and had found no basis upon which to appeal the defendant's conviction and sentence. Counsel forwarded copies of the motion and brief to defendant by certified mail, and counsel advised defendant of his opportunity to file an appellate brief on his own behalf. In response, defendant filed with this court a motion to extend the due date for his brief from November 20, 1993 to December 20, 1993. On March 18, 1994, a brief was filed by appellate counsel.

FACTS
At trial, Deputy Boyd Frickey of the St. Charles Parish Sheriff's Office testified that on September 10, 1992, he was stopped at a red light on Paul Maillard Road. As he reached over to get a french fry, he noticed that the vehicle on the side of him had an expired brake tag. When the light turned green and this vehicle drove off, Deputy Frickey observed that the temporary license plate was torn and old, leading the officer to believe that it, like the brake tag, was expired.
At this point, Officer Frickey performed a traffic stop and requested that the driver, later identified to be Anthony Allen, exit the vehicle. Both the driver and the passenger, defendant Russell Allen, exited the vehicle from the passenger's side. Defendant then re-entered the vehicle while the driver walked back towards the officer's unit.
At this point, Officer Will Dufrene, who had observed the situation from his unit, arrived. Defendant then exited the vehicle again and looked around. Deputy Frickey ordered defendant to re-enter the vehicle, *397 but defendant ignored his command and then ran for the wooded area north of their location.
Immediately after defendant fled, he started reaching both of his hands towards his groin area. Deputy Frickey dropped his clipboard and pursued defendant on foot. After they ran through a ditch that was partially full of water, defendant, with his hands still in his pants, turned around in an apparent attempt to see the officer's location. At that point, Officer Frickey managed to get close enough to defendant to push him to the ground. Fearing that defendant was trying to get a gun out of his pants, Deputy Frickey straddled defendant and pinned his shoulder to the ground. In the meantime, Deputy Mark Smith arrived to assist Deputy Frickey. The officers handcuffed defendant's hands behind his back and then rolled him over. As they did so, the officers observed a brown paper bag located on the ground underneath defendant's chest area. Deputy Frickey retrieved the bag, and upon opening it, he observed two plastic bags containing what appeared to be crack cocaine. He also observed a M & M candy bag which was later opened and also found to contain crack cocaine. A preliminary field test was done at the scene, proving the substances positive for the presence of cocaine.
After retrieving the narcotics, Deputy Frickey advised defendant of his rights, placed him under arrest and situated him in the police unit. Deputy Frickey then met with Officer Will Dufrene who had placed the driver under arrest for numerous traffic violations, including no driver's license. At trial, Deputy Frickey identified defendant as the individual he apprehended and found the crack cocaine underneath.
At trial, after being accepted as an expert in forensic science, Kenneth Michael Reine, II, of the Louisiana State Police Crime Lab, testified that he analyzed the white rock like substances retrieved from defendant. The three bags he was given to analyze contained approximately 173 rocks, for a total weight of 40 grams. His analysis of the rock like substances revealed the presence of cocaine.
After the State presented its case, defendant chose to testify in his own behalf; however, his version of events differs from that of the officers involved. According to defendant, when the officer stopped them, he instructed defendant and his brother, Anthony Allen, to exit the car. After defendant got out of the car, the officer yelled at him to get back in. As defendant turned to try to re-enter the vehicle, he observed his brother throw a bag toward the wooded area. According to defendant, he tried to meet the officer's demand to get back into the car; however, as he was maneuvering around his brother, who was still in the process of exiting the vehicle, defendant slipped and fell into the ditch. At that time, the officer tackled defendant to the ground and started hitting him with his service revolver in the back of his head. Defendant turned around and the officer slapped him in his mouth knocking out his two front teeth. Defendant admitted that his hands were in front of him but claimed he was merely using his hands to keep his face from going into the mud. Defendant further testified that he ran because he did not know his brother had narcotics on him, he was scared, and he wanted to avoid being arrested. Throughout his testimony, defendant maintained his claim that it was his brother's cocaine.
After listening to the conflicting versions of events, the jury found defendant guilty of possession of over 28 grams of cocaine.

ASSIGNMENT OF ERROR NO. ONE
The trial court erred in denying the Motion to Suppress Evidence.

DISCUSSION
Defendant asserts a two-fold argument in this assignment. He initially asserts that Officer Frickey had no suspicion whatsoever of any criminal activity on the part of defendant when he issued loud verbal commands to defendant to get back into the car. Defendant seems to assert that this initial portion of the encounter amounted to an illegal investigatory stop and therefore, the cocaine which defendant allegedly later discarded was not legally seized and should have been suppressed.
In the second portion of his argument, defendant asserts that, assuming the court finds Deputy Frickey's initial conduct constitutionally *398 permissible, then Deputy Frickey was without the necessary reasonable suspicion when he subsequently chased and tackled defendant. Defendant further asserts that lacking any articulable reasonable suspicion other than flight, Deputy Frickey's seizure of defendant was illegal, and the resulting recovery of the contraband unconstitutional.
Deputy Frickey testified that he stopped the vehicle in which defendant was a passenger because the car had an expired brake tag, as well as a possible expired temporary license plate. It has been held that a traffic violation constitutes reasonable cause for a stop. See State v. Reed, 388 So.2d 776 (La.1980); State v. Zilton, 516 So.2d 178 (La.App. 4th Cir.1987); State v. Davis, 452 So.2d 1208 (La.App. 5th Cir.1984); State v. Murley, 514 So.2d 1189 (La.App. 1st Cir. 1987), writ denied, 520 So.2d 424 (La.1988).
Having determined there was reasonable cause for the stop of the car, it must now be determined whether the officer's loud verbal commands to defendant, the passenger, to get back into the car constituted an illegal detention or a violation of any of defendant's constitutional rights.
Deputy Frickey did not order the passenger out of the vehicle, but rather told him to stay inside the vehicle while the officer dealt with the driver. Deputy Frickey did not ask the passenger for identification, did not frisk the passenger for weapons, and in fact, in no way, infringed on the privacy interests of defendant in ordering him to stay in the car. At this point in time, there was no intrusion upon defendant's liberty or privacy interests which would require some particularized and objective justification under the fourth amendment.
At the time the officer tackled defendant and pinned him to the ground, there was clearly a "seizure" for purposes of the Fourth Amendment. However, at the time of this stop, the defendant had not abandoned the cocaine as he suggests. Rather, at the point the officer tackled defendant, defendant still had his hands in his pants and as he struggled with the officer, his hands moved upward towards his chest area.
Since there was a stop prior to the time the narcotics were found, the officer had reasonable suspicion necessary to effect a stop. The testimony adduced both at the suppression hearing and at trial shows that defendant ignored the officer's commands to get back into the vehicle; both the defendant and the driver of the vehicle were acting nervously and kept looking around; defendant fled into a nearby wooded area despite the fact that the officer's inquiry was not focused on him but rather on the driver due to some traffic violations. In addition, defendant ignored the officer's commands to halt, and the whole time defendant was running, he had his hands in his groin area, leading the officer to believe he may have a weapon. The trial judge, in his reasons for denying the motion to suppress, also took judicial notice that this was a high crime area.
Thus, based on the "totality of the circumstances," the officer had reasonable suspicion at the time he "seized" defendant for Fourth Amendment purposes. Since the officer had reasonable suspicion to stop defendant, then the subsequent seizure of the cocaine from the ground is justified.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
The trial court erred in refusing to admonish the jury as requested by defense counsel following Frickey's prejudicial remark concerning a statement by the appellant.

DISCUSSION
During the redirect testimony of Deputy Frickey, the following exchange occurred:
Q. Okay. I just want to make sure, is there any doubt in your mind that this is the man who ran from you and who you caught and you had turned over and found the drugs underneath, any doubt whatsoever?
A. None. I can't forget the man who accused me of putting the drugs on him.
MS. DUBROCA:
Objection, your Honor. That was unsolicited testimony.
MR. ROME:
He's testifying to his motivation.

*399 THE COURT:
Well, it came out already. Let's just move along.
MS. DUBROCA:
I'd just ask that it be stricken from the record and that the jury be admonished not to consider that in any fashion.
THE COURT:
I really don't think that's necessary. I think that's a response to the question, and you know, the facts, the jury is the decider of the fate of this man and the facts. I've allowed you lots of latitude in your questioning. Usually I don't. I have let you go really, really beyond, you know, cross-examination.
MS. DUBROCA:
Just note my objection that it's not responsive, your Honor.
Defendant now contends that the trial court erred in failing to admonish the jury to disregard Deputy Frickey's testimony because his gratuitous remark might have created prejudice against defendant in the jury's mind because it was inconsistent with the defense presented at trial that the cocaine belonged to his brother.
When gratuitous information supplied by a witness effectively jeopardizes the defendant's due process right to a fair trial, a trial court is required to follow Code of Criminal Procedure Articles 771 and 775. These articles collectively provide for admonition or even declaration of a mistrial if the trial court is satisfied that prejudicial conduct has deprived the defendant of a fair trial. State v. Brown, 557 So.2d 1085 (La.App. 2nd Cir. 1990).
An admonition has been held to be sufficient to cure any prejudice resulting from remarks made by witnesses which are voluntary and unresponsive to the prosecutor's questions when these questions do not indicate bad faith on the part of the state. State v. Morgan, 454 So.2d 364, 370 (La.App. 4th Cir.1984).
L.S.A.-C.Cr.P. art. 771 leaves the decision as to whether to grant a mistrial or admonition to the sound discretion of the trial court. State v. Goods, 403 So.2d 1205 (La.1981).
In the present case, defendant showed no prejudice from the officer's comment. Therefore, the trial judge did not err in refusing to admonish the jury.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THREE
The trial court erred in denying the defense's challenge for cause vis-a-vis an ex-deputy from the St. Charles Parish Sheriff's Office.

DISCUSSION
Defendant contends that the trial court erred in denying his challenge for cause which he exercised on prospective juror, Mr. St. Pierre. During voir dire questioning, it was learned that although Mr. St. Pierre presently works as a grain inspector with the United States Department of Agriculture, he previously worked as a deputy for the St. Charles Parish Sheriff's Office in 1987 and 1988. From his previous employment with the Sheriff's Office, he knew several potential state witnesses. However, during further voir dire questioning, it was brought out that although he knew these people, he did not actually work with any of them and he did not have a personal friendship with any of them. He stated that despite the fact he knew these people, he felt he could judge their credibility from the testimony alone and not use his personal knowledge of them in judging the guilt or innocence of defendant.
Defense counsel thereafter exercised a peremptory challenge on Mr. St. Pierre, and now contends that the trial court erred in denying his challenge for cause.
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Bourque, 622 So.2d 198 (La.1993). A trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on review unless a review of the voir *400 dire as a whole indicates an abuse of discretion. State v. Bourque, supra.
Previous associations with either law enforcement agencies or personnel will not alone disqualify a prospective juror from service. Nevertheless, such associations should be closely scrutinized by the trial court and the reviewing court. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986), rehg. denied, 478 U.S. 1032, 107 S.Ct. 13, 92 L.Ed.2d 768 (1986).
Mr. St. Pierre stated that although he knew several of the potential witnesses due to his previous employment with the sheriff's office, he did not actually work with them and had no personal friendship with any of them. In addition, Mr. St. Pierre was employed with the sheriff's office for a relatively short period of time. While employed there as a deputy, he had no involvement in drug enforcement. Moreover, at the time of defendant's trial, Mr. St. Pierre had been disassociated from his employment at the sheriff's office for approximately five years. He also expressed his ability to render a fair and impartial judgment and to hold the state to its burden of proving the elements of the offense beyond a reasonable doubt. Given these circumstances, the trial judge did not abuse his discretion in denying defendant's challenge for cause.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
The trial court erred by requiring the State and defense to alternate the exercising of peremptory challenges.

DISCUSSION
Defendant contends that during the jury selection, the court often required the defense to exercise its peremptory challenges before the State did, thereby impairing defendant's right to trial by jury as guaranteed by Article I, Section 17 of the Louisiana Constitution.
LSA-C.Cr.P. art. 788 provides for tendering of jurors as follows:
A. After the examination provided by Article 786, a prospective juror may be tendered first to the state, which shall accept or challenge him. If the state accepts the prospective juror, he shall be tendered to the defendant, who shall accept or challenge him. When a prospective juror is accepted by the state and the defendant, he shall be sworn immediately as a juror. This Article is subject to the provisions of Articles 795 and 796.
B. If the court does not require tendering of jurors, it shall by local rule provide for a system of simultaneous exercise of challenges.
The procedure to be used for the exercise of peremptory challenges is further specified in LSA-C.Cr.P. art. 795, which reads, in part, as follows:
A. A juror shall not be challenged for cause after having been temporarily accepted pursuant to Paragraph A of Article 788 unless the challenging party shows that the cause was not known to him prior to that time.
B. (1) Peremptory challenges shall be exercised prior to the swearing of the jury panel.
(2) Peremptory challenges of jurors shall be made and communicated to the court in a side bar conference of the judge, the attorneys conducting the examination and selection of jurors, and the defendant in a case in which the defendant chooses to represent himself. The conference shall be conducted in a manner that only the court, the attorneys, and the defendant in a case in which the defendant chooses to represent himself, are aware of the challenges made until the court announces the challenges without reference to any party or attorney in the case.
In the present case, the record of the voir dire does not indicate that the trial judge made defendant execute any of his peremptory challenges first. Rather, the judge had both the state and the defendant write them down simultaneously. The parties then had a side bar conference with the judge in which they alternately exercised the challenges, which they had already written down. This procedure seems to be in compliance with LSA-C.Cr.P. arts. 788 and 795, supra. In the present case, defendant's right to exercise *401 his peremptory challenges was not curtailed in any way, nor was he placed at a disadvantage by the procedure employed by the trial judge in exercising the challenges.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
The sentence imposed by the trial court was improper in that it did not consider the sentencing guidelines.

DISCUSSION
In the present case, defendant was convicted of possession of over 28 grams of cocaine. The penalty provision for that offense is provided for in LSA-R.S. 40:967 F(1)(a) which reads:
(a) Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
Defendant was sentenced as a second felony offender under the provisions of LSA-R.S. 15:529.1 A(1) which states:
A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
Based on the foregoing statutes, as a second felony offender, the minimum sentence defendant could have received was 15 years and the maximum was 60 years. Prior to imposing sentence, the trial judge observed that the appropriate sentencing range pursuant to the Louisiana Sentencing Guidelines was considerably less than the mandatory minimum required by LSA-R.S. 15:529.1. After so noting, the judge sentenced defendant to 20 years at hard labor. Defendant now contends that under the sentencing guidelines and the rationale of State v. Smith, 629 So.2d 333 (La.1993), he should have been sentenced to the mandatory minimum sentence of 15 years. Defendant asserts that since the trial judge was silent as to any aggravating circumstances which would warrant an upward departure from the minimum 15 year sentence, then the matter should be remanded for resentencing consistent with the requirements of State v. Smith, supra.
It is initially noted that defendant did not object to the sentence imposed, nor did he file a motion to reconsider in the district court pursuant to LSA-C.Cr.P. art. 881.1.
Accordingly, since defendant did not file a motion to reconsider or orally object to the sentence imposed, it appears that defendant is precluded from raising a claim about his sentence on appeal. State v. Alas, 622 So.2d 836 (La.App. 5th Cir.1993); writ denied, 629 So.2d 397 (La.1993); State v. Morgan, 612 So.2d 302 (La.App. 5th Cir.1992).
Nonetheless, out of an abundance of caution, defendant's argument will be considered here.
When the defendant has been convicted of a felony, the court shall consider the sentencing guidelines promulgated by the Louisiana Sentencing Commission in determining the appropriate sentence to be imposed. However, no sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the court to impose a sentence in conformity with the sentencing guidelines of the commission. See LSA-C.Cr.P. art. 894.1 A and art. 881.6.
LSA-C.Cr.P. art. 881.4 D further provides that "[T]he appellate court shall not set *402 aside a sentence for failure to impose a sentence in conformity with the sentencing guidelines or for excessiveness if the record supports the sentence imposed." (emphasis added).
Although the trial judge did not give detailed reasons for the sentence imposed, the transcript from the sentencing proceedings indicate that the trial judge carefully considered the sentencing guidelines, the pre-sentence investigation report and the designated sentencing range for defendant as provided in the guidelines. Given the judge's careful consideration of the sentence to be imposed, the twenty year sentence imposed on defendant, a second felony offender, is amply supported by the record.
This assignment of error is without merit.

ERROR PATENT DISCUSSION
An error patent review reveals that defendant was not given credit for time served in accordance with LSA-C.Cr.P. art. 880 which reads as follows:
The court, when it imposes sentence, shall give a defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence.
Since article 880 is mandatory in nature, defendant is entitled to credit for time served. See State v. Burrow, 565 So.2d 972 (La.App. 5th Cir.1990), writ denied, 572 So.2d 60 (La.1991), where the trial court was ordered to amend the minute entry to reflect defendant being given credit for time served.
It is additionally noted that the defendant's enhanced sentence was not specifically imposed without benefit of probation or suspension as required by LSA-R.S. 15:529.1 G. However, since the trial judge did not suspend any portion of the sentence or impose any probationary period, he, in effect, complied with the sentencing directive in the statute. See State v. Washington, 563 So.2d 530 (La.App. 5th Cir.1990).
Also, the sentence was illegally lenient insofar as the trial judge did not deny defendant parole eligibility for a period equal to the minimum sentence and did not impose a fine as set forth in the underlying statute. LSA-R.S. 40:967 F(1)(a) reads as follows:
F. Other penalties for possession. (1) Except as otherwise authorized in this Part:
(a) Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule II(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
Subsection G of LSA-R.S. 40:967 then provides that under the provisions of Subsection F, "the adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F."
LSA-C.Cr.P. art. 882 states:
A. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.
B. A sentence may be reviewed as to its legality on the application of the defendant or of the state:
(1) In an appealable case by appeal; or
(2) In an unappealable case by writs of certiorari and prohibition.
C. Nothing in this Article shall be construed to deprive any defendant of his right, in a proper case, the writ of habeas corpus.
In State v. Fraser, 484 So.2d 122 (La.1986), the Louisiana Supreme Court noted that an appellate court may not amend or set aside an illegally lenient sentence on its own motion, when defendant alone has appealed and the prosecutor has not sought review of the sentence. In this case, the state failed to raise the issue of the illegally lenient sentence by motion or argument to this court. Therefore, any sentencing error in defendant's favor should not be corrected by this court. See State v. Vanderlinder, 575 So.2d *403 521 (La.App. 5th Cir.1991), writ denied, 580 So.2d 377 (La.1991).
In addition, the trial judge did not properly advise defendant of his rights in the multiple offender proceedings. In State v. Washington, supra at p. 533, this court stated:
When a multiple offender bill of information is filed LSA-R.S. 15:529.1 D provides that the trial court shall order the defendant to appear before it and "shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true." LSA-R.S. 15:529.1 also implicitly requires that the court advise the defendant of his right to remain silent. State v. Johnson, 432 So.2d 815 (La.1983) writ granted on other grounds, 438 So.2d 1113 (La.1983).
This court has consistently vacated enhanced sentences handed down by the trial court upon acceptance of a plea of guilty by a defendant who has not been informed of his rights in a multiple bill hearing. State v. McIntyre, 496 So.2d 1204 (La.App. 5th Cir.1986); State v. Gilbert, 520 So.2d 1184 (La.App. 5th Cir.1988) appeal after remand 535 So.2d 1313 (La.App. 5th Cir. 1988); State v. Jackson, 527 So.2d 1039 (La.App. 5th Cir.1988).
While we acknowledge that the failure to advise a defendant of his right to a trial and to remain silent in a multiple bill hearing is error, we believe in the instant case the error is harmless. The trial court read the predicate offenses charged by the multiple bill and the defendant was asked to admit or deny the allegations. He denied them and the state was forced to meet its burden of proving that the defendant was a three-time felony offender. While the defendant was not advised of his rights, the trial court honored them.
The instant case differs from the above cited jurisprudence in that the multiple offender status was established by competent evidence offered by the state at the hearing rather than by an admission of the defendant. Consequently, the failure of the trial court to advise the defendant of his rights is harmless error. State v. Mallett, 552 So.2d 28 (La.App. 3rd Cir.1989); LSA-C.Cr.P. art. 921. Accordingly, the defendant's conviction and sentence are affirmed.
In the present case, although the defendant was not advised of his rights, the trial court honored them. The defendant remained silent and the state was forced to meet its burden of proving that defendant was a multiple offender. Consequently, the failure of the trial court to advise defendant of his rights was harmless, as in State v. Washington, supra.
It also appears that the trial judge failed to give defendant an opportunity to admit or deny the allegations in the multiple bill, LSA-R.S. 15:529.1 D(1)(a). LSA-C.Cr.P. art. 555 reads as follows:
Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.
Since defendant proceeded to the hearing without objecting to lack of arraignment, any error in the failure to arraign is waived. Although defendant was not formally arraigned on the multiple offender bill and did not plead, he went to trial without objecting to the absence of arraignment; thus, he was considered to have entered a plea of not guilty and any irregularity in arraignment procedure was waived, since no prejudice was shown. See State v. Williams, 515 So.2d 1117 (La.App. 5th Cir.1987), writ denied, 520 So.2d 423 (La.1988).
Here, although there are errors, none are of such a nature as to require reversal of defendant's conviction. Accordingly, the defendant's conviction and sentence are affirmed and the trial court is ordered to amend the minute entry to reflect defendant being given credit for time served.
AMENDED AND AFFIRMED.