JUDE G. GRAVOIS, Judge.
 

 |sThe defendant, Terrell J. Suggs, has appealed his conviction of possession of marijuana, second offense, and sentence as a third multiple offender. For the reasons that follow, we affirm defendant’s conviction, vacate defendant’s multiple offender sentence, and remand to the trial court to correct the commitment on defendant’s underlying sentence and for resentencing on defendant’s multiple offender adjudication.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 On December 2, 2008, defendant was charged with possession of marijuana, second offense, in violation of LSA-R.S. 40:966(C). Defendant pled not guilty to the charge on December 16, 2008. On September 3, 2009, the trial court heard and denied defendant’s motions to suppress his statement and evidence. On January 4, 2010, trial commenced and a six-person jury returned a verdict of guilty as charged. Defendant gave oral notice of his intention to file a motion for appeal. Also on January 4, 2010, the State made known its intention to file a multiple bill against defendant.
 

 |4On January 14, 2010, the trial court sentenced defendant to five years imprisonment for his conviction of possession of marijuana, second offense. Defendant’s oral motion to reconsider the sentence was denied by the trial court. Defendant’s written motion for appeal was granted.
 

 On that same date, after the sentence was imposed, the State filed a multiple offender bill of information against defendant and a hearing on the multiple bill commenced. The trial court then adjudicated defendant to be a third felony offender, and after sentencing delays were waived, sentenced defendant to ten years imprisonment, with credit for time served, without the benefit of probation or suspension of sentence in accordance with LSA-R.S. 15:529.1.
 

 At the hearing on defendant’s motion to suppress, Deputy Dustin Ducote of the Jefferson Parish Sheriffs Office testified that while on patrol, he observed defendant traveling at a high rate of speed and initiated a traffic stop. Upon approaching defendant’s vehicle, Deputy Ducote noticed that defendant was acting in a very nervous manner, “fooling with everything” while inside the vehicle. Because of defen
 
 *63
 
 dant’s actions, Deputy Ducote asked defendant to step out to the rear of the vehicle for safety reasons. While at the rear of the vehicle, defendant continually placed his hands in his pockets. Deputy Ducote then instructed defendant to place his hands on the back of the vehicle. At that point, Deputy Ducote conducted a pat-down search of defendant for weapons.
 

 While performing the search, Deputy Ducote felt a slender object, which he believed could have been a knife, along with another object, in defendant’s pocket. Deputy Ducote placed defendant in handcuffs, then reached into defendant’s pocket and removed a box cutter and a plastic bag containing green vegetable matter. After Deputy Ducote found the green vegetable matter, defendant stated: “I don’t know what that is. Do you want it, or you could throw it away.” Upon | finding the green vegetable matter, Deputy Ducote “Miran-dized” defendant and advised him that he was being arrested for possible possession of marijuana.
 

 On cross-examination, Deputy Ducote further described defendant’s behavior while he was inside the vehicle, which included fidgeting around in the vehicle, feeling on the outside of his pocket, and failing to make eye contact. Deputy Ducote indicated that this behavior, coupled with the fact that they were in a high crime drug area, caused him to ask defendant to step out of the vehicle. Deputy Ducote further testified that the box cutter was not placed into evidence because he did not believe it had any evidentiary value and because it was not illegal for defendant to carry a box cutter.
 

 The trial court denied defendant’s motion to suppress evidence, finding: that Deputy Ducote had the right to stop defendant because he was speeding; that Deputy Ducote asked defendant to step out of the car because defendant was acting in a nervous manner; that defendant kept digging in his pockets; that it was a high crime drug area, which prompted Deputy Ducote to do a pat-down search of defendant for officer safety; and that Deputy Ducote felt the box cutter, giving him the right to go into defendant’s pockets, ultimately finding the box cutter along with the marijuana.
 

 The trial judge further denied defendant’s motion to suppress his statement to Deputy Ducote, finding that the statement was voluntarily offered by defendant, that it was not in response to a question by Deputy Ducote, and that the statement was made before defendant was “boykin-ized” [sic].
 

 On January 4, 2010, the matter proceeded to trial.
 
 [1]
 
 The State called Deputy Du-cote to the stand and he testified substantially in conformity with his previous | (¡testimony at the suppression hearing. He stated that he stopped defendant for reckless driving and speeding after pacing defendant’s vehicle at 50 miles per hour, 30 miles per hour over the posted speed limit, in a residential area with a park and children in close proximity. He explained that defendant was fidgeting in the center console of the vehicle, which made Deputy Ducote nervous because traffic stops are high risk. After encountering defendant, and observing his nervous and “irregular” behavior, Deputy Ducote became concerned for his safety and directed defendant to step out of his vehicle and place his hands on the trunk. Deputy Ducote explained that although defendant initially
 
 *64
 
 complied, he thereafter repeatedly reached his hands into his pockets removing his hands from the trunk, which became a “safety issue” for Deputy Ducote. Because defendant continually failed to follow Deputy Ducote’s explicit instructions for defendant to remove his hands from his pockets and place them on the trunk, Deputy Ducote placed defendant in handcuffs.
 

 Deputy Ducote then conducted a pat-down search of defendant for weapons in which he felt a slender object and a bag in defendant’s front right pocket. Deputy Ducote asked defendant what was in his pocket and defendant said he did not know. Deputy Ducote then reached into defendant’s pocket and removed a box cutter. As Deputy Ducote was pulling the box cutter out of defendant’s pocket, a bag of green vegetable matter also came out into Deputy Ducote’s hand. Immediately, defendant said: “I don’t know what that is. Do you want it? You can throw it away.” Deputy Ducote then advised defendant of his Miranda
 
 [2]
 
 rights and informed defendant that he was being arrested. The contents of the bag field tested positive for marijuana, which was confirmed by further analysis.
 
 [3]
 

 |7On cross-examination, Deputy Ducote disclosed that he placed the box cutter back into defendant’s vehicle because it was not illegal for defendant to carry it.
 

 The State called Deputy Aischa Prud-homme, who was recognized by the court as an expert latent fingerprint examiner, and who testified that she took defendant’s fingerprints in court before trial commenced that morning and compared them against a print card that contained in a certified conviction packet from a case in 2002 involving marijuana possession. Deputy Prudhomme testified that based on the fingerprint comparison, defendant was the same person who was convicted for the possession of marijuana in the 2002 case. The State admitted Exhibits 4, 5, and 6, which consisted respectively of the fingerprint card taken that day in court, a certified conviction packet of the prior conviction in 2002, including a fingerprint card, and a fingerprint card from the prior arrest of defendant in the 2002 case.
 

 After the testimony of Deputy Prud-homme concluded, defendant recalled Deputy Ducote to the stand. In response to questioning by defendant’s attorney, Deputy Ducote explained that defendant repeatedly reached into his pockets, about three or four times, against Deputy Du-cote’s constant directives to the contrary before Deputy Ducote placed defendant in handcuffs and conducted the pat-down search of defendant for safety. In response to the question as to why the box cutter was not brought into evidence, Deputy Ducote reiterated that because it was not illegal for defendant to carry a box cutter, he left it in defendant’s vehicle. He also stated that he did not feel that it was important to take the box cutter as a piece of evidence.
 

 |sThe trial proceeded to closing arguments and the jury was sent out to deliberate. The jury then returned a guilty verdict and the court set sentencing for the following week. Then, for the second time, the State made known its intention
 
 *65
 
 to file a multiple offender bill of information against defendant.
 

 At the sentencing hearing, held on January 14, 2010, defendant was sentenced to five years imprisonment. Defendant immediately made an oral motion to reconsider the sentence arguing that the sentence was excessive considering defendant’s age and the nature of the charge. The trial court denied the motion. Defendant then filed a motion to appeal the verdict in open court which the trial court granted orally and subsequently in writing.
 

 On January 14, 2010, after sentencing, the State filed a multiple offender bill of information alleging that defendant was a third felony offender, with two prior felony convictions: case number 02-1917, possession of cocaine, and case number 03-4292, possession of cocaine. The multiple offender hearing commenced immediately after counsel for defendant stated that she and defendant were “ready to proceed with the multiple bill hearing.”
 

 At the multiple offender hearing, the State called Deputy Prudhomme, recognized by the court as an expert in latent fingerprints, who testified that she took a set of fingerprints from defendant on January 4, 2010 in connection with defendant’s conviction of possession of marijuana, second offense. These prints, along with two certified copies of convictions in the two predicate offenses, including fingerprints, were placed into evidence. Deputy Prud-homme testified that she reviewed the exhibits and concluded that the fingerprints taken in the prior convictions matched the fingerprints taken in court on January 4, 2010, and that all the fingerprints belonged to defendant, whom she identified in open court.
 

 |9The court then found that defendant was convicted on January 4, 2010 of second offense possession of marijuana, and that he was convicted twice for possession of cocaine, once on August 27, 2002 and again on January 27, 2004.
 

 After waiving sentencing delays, the court sentenced defendant to ten years imprisonment without the benefit of probation or suspension of sentence, in accordance with LSA-R.S. 15:529.1. After noting defendant’s objection,
 
 [4]
 
 the court vacated its previous sentence on the underlying conviction, and sentenced defendant to ten years imprisonment without the benefit of probation or suspension of sentence.
 

 COUNSELED ASSIGNMENTS OF ERROR
 

 While defendant’s counseled brief lists excessive sentence as the only assignment of error, four issues are actually raised therein.
 

 Procedural Irregularities
 

 First, defendant contends that the multiple offender adjudication should be vacated and remanded because it was not in conformity with the mandates of LSA-R.S. 15:529.1(D). Specifically, defendant asserts that he was not arraigned and he was not given the required time period, 15 days, in which to file objections to the multiple offender bill. Additionally, defendant urges that the court did not advise him of his right to remain silent and/or to be compelled to acknowledge the predicate offenses. We find no merit to these arguments.
 

 
 *66
 
 The Multiple Offender Statute directs the trial court to order the defendant to appear before it, inform the defendant of the allegations contained in the bill of information, of his right to be tried as to the truth, and to require the offender to | incomment on the truth of the allegations. LSA-R.S. 15:529.1(D)(l)(a). Implicit in the statute is the requirement of the court to advise the defendant of his right to remain silent.
 
 State v. Allen,
 
 93-838, p. 16 (La.App. 5 Cir. 5/31/94), 638 So.2d 394, 403, (citing
 
 State v. Johnson,
 
 432 So.2d 815 (La.1983)).
 

 However, LSA-C.Cr.P. art. 555 states:
 

 Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.
 

 This Court has consistently held that when a defendant proceeds to a multiple offender hearing without objecting to the lack of arraignment, any error in the failure to arraign is waived.
 
 Allen,
 
 93-838 at 16, 638 So.2d at 403;
 
 State v. Harris,
 
 01-1380 (La.App. 5 Cir. 4/30/02), 817 So.2d 387, 389;
 
 State v. Evans,
 
 02-1108 (La.App. 5 Cir. 3/11/03), 844 So.2d 111, 115. Additionally, this Court has held that the failure of the trial court to advise the defendant of his right to remain silent is harmless error when the defendant remains silent and his multiple offender status is established by competent evidence offered by the State at the hearing, rather than by the defendant’s admission.
 
 Allen,
 
 93-838 at 16, 638 So.2d at 403;
 
 State v. Harris,
 
 01-1380 (La.App. 5 Cir. 4/30/02), 817 So.2d 387, 389; (citing
 
 State v. Perkins,
 
 99-1084 (La.App. 5 Cir. 1/25/00), 751 So.2d 403, 408-09,
 
 writ denied,
 
 00-656 (La.12/15/00), 777 So.2d 476).
 

 In the instant case, defendant proceeded to the multiple offender hearing without objecting, with counsel stating that the defendant was “ready to proceed with the multiple offender hearing.” Therefore, any procedural irregularity or error in the failure to arraign defendant was waived.
 

 11 furthermore, the trial court held a hearing at which defendant’s multiple offender status was established by evidence. Specifically, Deputy Prudhomme testified that she took a set of fingerprints on January 4, 2010 in connection with defendant’s conviction of possession of marijuana, second offense, and compared these fingerprints with those contained in two certified copies of convictions in the two predicate offenses, and concluded that the fingerprints all belonged to defendant. Additionally, defendant exercised his right to remain silent because he did not testify at this hearing.
 

 Defendant contends that the multiple offender adjudication should be vacated and remanded pursuant to
 
 State v. Johnson,
 
 432 So.2d 815 (La.1983), because defendant was not apprised of his right to remain silent. However,
 
 Johnson
 
 is distinguishable from the present case because in that case, the defendant was not apprised of his right to remain silent, the State offered no evidence to prove the defendant’s multiple offender status, and then the defendant was compelled to testify against himself regarding a prior conviction in another state.
 
 Id.
 
 at 815-17. Conversely, in the present case, defendant was not required to testify against himself; rather, he did not testify at all, and the State established that defendant was a multiple offender through competent evidence. Therefore, we conclude that the trial court’s failure to inform defendant of
 
 *67
 
 his right to remain silent was harmless error.
 

 Adequate Proof of Predicate Convictions
 

 Second, defendant asserts that he cannot ascertain from the record whether the State met its burden in providing adequate proof that defendant was a multiple offender under the Multiple Offender Statute. We find no merit to this assertion.
 

 To prove a defendant is a habitual offender, the State must prove the prior felony convictions and that the defendant is the same person who was convicted of | iathe prior felonies.
 
 State v. Mims,
 
 00-1507, p. 8 (La.App. 5 Cir. 12/26/01), 806 So.2d 760, 766,
 
 writ denied,
 
 02-0466 (La.2/7/03), 836 So.2d 88. The State may establish the defendant’s identity by various means, such as expert testimony, matching fingerprints of the accused to those in the record of a prior proceeding, testimony of witnesses to prior crimes, or photographs contained in a duly authenticated record.
 
 State v. Breaux,
 
 00-236 (La. App. 5 Cir. 8/29/00), 767 So.2d 904, 909,
 
 writ denied,
 
 00-2874 (La.6/29/01), 794 So.2d 808; (citing
 
 State v. Richmond,
 
 98-1015 (La.App. 5 Cir. 3/10/99), 734 So.2d 33, 37; and
 
 State v. Bailey,
 
 97-302 (La.App. 5 Cir. 4/28/98), 713 So.2d 588, 610,
 
 unit denied,
 
 98-1458 (La.10/30/98), 723 So.2d 971). When the State relies on a prior conviction that is based on a guilty plea in proving the defendant’s multiple offender status, and the defendant denies the allegations of the multiple bill, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken.
 
 State v. Shelton,
 
 621 So.2d 769, 779-80 (La.1993). Once the State meets this burden, the defendant must produce affirmative evidence of an infringement of his rights or of a procedural irregularity.
 
 Id.
 
 If the defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea, that is, that the plea was knowing and voluntary.
 
 Id.
 
 This final burden can be met if the State produces a “perfect transcript” articulating the Boykin
 
 [5]
 
 colloquy between the defendant and the trial judge, or any combination of a guilty plea form, a minute entry, or an “imperfect” transcript.
 
 State v. Collins,
 
 04-255, p. 6 (La.App. 5 Cir. 10/12/04), 886 So.2d 1149, 1154,
 
 writ denied,
 
 04-2798 (La.3/11/05), 896 So.2d 62. If the State introduces anything less than a “perfect” transcript, such as a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge must weigh the |1sevidence submitted by each party to determine whether the State has met its burden of proving the prior guilty plea was “informed and voluntary, and made with an articulated waiver of the three
 
 Boykin
 
 rights.”
 
 Shelton,
 
 621 So.2d at 780.
 

 In the instant case, the multiple offender bill of information alleged defendant had three prior felony convictions: (1) possession of cocaine (LSA-R.S. 40:967(0) in 2002 in case number 02-1917 in Jefferson Parish; (2) possession of cocaine (LSA-R.S. 40:967(0) in 2004 in case number 03-4292 in Jefferson Parish; and (3) second offense possession of marijuana (LSA-R.S. 40:966(0) in 2010 in case number 08-6038 in Jefferson Parish. The State alleged that the two predicate convictions for possession of cocaine resulted from guilty pleas. Because defendant proceeded to trial at the multiple offender hearing thereby waiving the formalities of arraignment, he is considered to have pled not guilty. LSA-C.Cr.P. art. 555,
 
 supra.
 

 
 *68
 
 The evidence indicates that the State met its initial burden of proving the existence of the prior convictions and that defendant was represented by counsel. Evidence introduced at the multiple offender hearing included State’s Exhibit 1, a fingerprint card taken from defendant on January 4, 2010 in connection with his conviction in case number 08-6038, and State’s Exhibits 2 and 3, certified copies of defendant’s two prior felony convictions for possession of cocaine from Case Numbers 02-1917 and 03^1292, respectively. Defendant pled guilty in case numbers 02-1917 and 03-4292. A review of the Plea of Guilty & Waiver of Rights Forms shows that each include a waiver of the three essential
 
 Boykin
 
 rights, maximum sentences for each of the charges, the nature of the charges, the actual sentence, and the signatures of defendant, his attorney, and the trial judge. Defendant also indicated on the forms that he had not been forced, coerced, or threatened to enter his guilty pleas. In case number 03-4292, defendant | ^acknowledged that “if convicted of another crime within ten years of the expiration of the sentence for this conviction, [he] would be eligible to be multiple billed.”
 

 The State met its burden of proving identity at the multiple offender hearing through the testimony of Deputy Prud-homme, who examined the fingerprints introduced into evidence and determined that they all belonged to defendant. Thus, we find that the State met its initial burden under
 
 Shelton.
 
 The burden then shifted to defendant to establish a defect in the proceedings or an infringement of his constitutional rights. Defendant did not object to any of the evidence submitted to prove the predicate offenses nor did he attempt to show any constitutional infringements or defects in the proceedings with respect to the prior guilty pleas. Thus, we find that the record indicates that the State provided adequate proof that defendant was a multiple offender.
 

 Reasons for Sentence
 

 Third, defendant argues that the court failed to provide written reasons for its determination that defendant was a third felony offender and its sentence, which requires this Court to vacate the sentence and remand for reconsideration. This argument is likewise without merit.
 

 LSA-R.S. 15:529.1(D)(3) provides that after the defendant is adjudicated a multiple felony offender, the court must sentence the defendant to the punishment so prescribed, vacate the previous sentence if already imposed, and provide written reasons for its determination. However, this Court has consistently found the trial court to be in compliance with the statute when it asserts oral reasons for finding the defendant to be a multiple offender, which are later transcribed to form part of the record.
 
 Breaux,
 
 00-236, 767 So.2d at 908 (citing
 
 State v. Neal,
 
 99-1853 (La.App. 5 Cir. 5/30/00), 762 So.2d 281; and
 
 State v. Perkins,
 
 99-1084 (La.App. 5 Cir. 1/25/00), 751 So.2d 403).
 

 11sIn the present case, the transcript from the multiple offender hearing shows that the trial judge gave oral reasons to support its finding that defendant was a third felony offender. Particularly, the trial judge stated that defendant was convicted once on a second offense possession of marijuana, and twice for possession of cocaine. Thus, the trial court has complied with the mandates of the Multiple Offender Statute because its oral reasons for determination were transcribed and now form part of the record.
 

 Defendant further argues that the trial judge did not give written reasons for sentencing pursuant to the mandates of LSA-C.Cr.P. art. 894.1. However, this issue was not raised in the trial court, and
 
 *69
 
 thus, defendant is precluded from raising this issue on appeal.
 
 State v. Carter,
 
 07-270 (La.App. 5 Cir. 12/27/07), 976 So.2d 196, 202.
 

 Excessive Sentence
 

 Defendant contends that the trial court imposed an excessive sentence in violation of the Constitutions of the United States and the State of Louisiana. However, as discussed
 
 infra,
 
 the trial court imposed an indeterminate sentence on defendant, which must be vacated. This finding pre-termits a discussion of defendant’s excessive sentence claim.
 

 PRO SE ASSIGNMENTS OF ERROR
 

 Defendant asserts three assignments of error in his
 
 pro se
 
 brief.
 

 In his first
 
 pro se
 
 assignment of error, defendant alleges that the bill of information does not include the date of his prior conviction in violation of LSA-C.Cr.P. art. 483. However, the record does not indicate that defendant raised this alleged defect in the bill prior to trial. A defendant may not raise the sufficiency of an indictment for the first time after conviction, especially when the charging | j (¡document fairly informed him of the charge against him and the alleged defect did not prejudice him.
 
 State v. Allen,
 
 01-2494 (La.6/21/02), 824 So.2d 344. Failure to do so waives the claim.
 
 Id.
 

 The bill of information charged defendant with possession of marijuana, second offense, included a case number from which the date of the prior conviction can be obtained, and as such sets forth an identifiable offense. Furthermore, defendant has not claimed any surprise, nor has he shown any prejudice due to this alleged defect. This assignment of error is without merit.
 

 In his second
 
 pro se
 
 assignment of error, defendant contends that he was subject to an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution and the Constitution of the State of Louisiana; therefore, defendant asserts that the marijuana should have been suppressed as it was obtained through an unlawful search.
 

 In order to determine whether a trial court’s motion to suppress ruling is correct, an appellate court may look at evidence presented at the motion hearing as well as pertinent evidence introduced at trial.
 
 State v. Mollette,
 
 08-138, p. 10 (La. App. 5 Cir. 11/25/08), 2 So.3d 461, 467,
 
 writ denied,
 
 09-155 (La.10/16/09), 19 So.3d 472 (citing
 
 State v. Batiste,
 
 06-824, p. 10 (La. App. 5 Cir. 3/13/07), 956 So.2d 626, 634,
 
 writ denied,
 
 07-0892 (La.1/25/08), 973 So.2d 751). The trial court is afforded great discretion when ruling on a motion to suppress and its ruling will not be disturbed absent an abuse of discretion.
 
 State v. Lee,
 
 05-2098, p. 15 (La.2008), 976 So.2d 109, 122
 
 cert. denied,
 
 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (citing
 
 State v. Vessell,
 
 450 So.2d 938, 943 (La.1984)).
 

 In a hearing on a defense motion to suppress the evidence, the State has the burden of establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703 D;
 
 State v. Manson,
 
 01-159, p. 5 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 755,
 
 cert. denied,
 
 01-2269 (La.9/20/02), 825 So.2d 1156. The exclusionary rule bars, as illegal fruit, evidence obtained either during or as a direct result of an unlawful invasion.
 
 Wong Sun v. U.S.,
 
 371 U.S. 471, 484-85, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). Evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution.
 
 State v. Harris,
 
 00-1930, p. 3 (La.App. 5 Cir. 4/11/01), 786 So.2d 798, 801-802.
 

 Once an officer has lawfully stopped a vehicle for a routine traffic violation, he is
 
 *70
 
 authorized to order both the driver and passenger out of the vehicle pending completion of the stop.
 
 State v. Gomez,
 
 06-417, p. 7 (La.App. 5 Cir. 11/28/06), 947 So.2d 81, 85 (citing
 
 Maryland v. Wilson,
 
 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)). Additionally, an officer conducting a traffic stop may perform a pat-down of a driver upon reasonable suspicion that he may be armed and dangerous.
 
 Knowles v. Iowa,
 
 525 U.S. 113, 118, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998); LSA-C.Cr.P. art. 215.1. Such a search “must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.”
 
 Terry v. Ohio,
 
 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889. This limited protective search is justified under circumstances where a reasonably prudent person in those circumstances would be warranted in the belief that his safety or the safety of others was in danger.
 
 Terry,
 
 392 U.S. at 27, 88 S.Ct. at 1883;
 
 State v. Boyer,
 
 07-0476, p. 20 (La.10/16/07), 967 So.2d 458, 471. “[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or ‘hunch/ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.”
 
 Terry,
 
 392 U.S. at 27, 88 S.Ct. at 1883. See also
 
 State v. Boyer,
 
 07-0476 at 20, 967 So.2d at 471.
 

 [iSWe find that the officer in the instant case had a reasonable, objective, and particularized basis for conducting a pat-down weapons search of defendant. Deputy Du-cote testified that he stopped defendant’s vehicle because he was speeding and that he asked defendant to step out of the vehicle because he was in a high crime drug area, traffic stops are high risk, and defendant was unusually nervous in that he was continually fidgeting, touching the outside of his pockets, and fooling with items in his vehicle. Once defendant exited the vehicle, he constantly reached his hands into his pockets against the orders of Deputy Ducote. Perceiving this as a safety hazard, Deputy Ducote conducted a pat-down search of defendant for weapons. During the course of the pat-down search, Deputy Ducote detected a long slender object in defendant’s pocket. Believing the object was a knife, Deputy Ducote reached into defendant’s pocket and found a box cutter, and incidentally, marijuana which fell into plain view while removing the box cutter from defendant’s pocket. Based on the foregoing, we find no error in the trial court’s denial of defendant’s motion to suppress.
 

 In his final
 
 pro se
 
 assignment of error, defendant argues that the arresting officer erred in not submitting into evidence the box cutter seized off of defendant. We find no merit to this argument because the only evidence seized from defendant was the marijuana. As noted above, the box cutter retrieved from defendant was never placed into the custody or control of the State; therefore, it was never seized and could not be placed into evidence by the State.
 

 ERRORS PATENT REVIEW
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975) and
 
 State v. Wetland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 haThe commitment reflects that defendant was sentenced to ten years imprisonment at hard labor on the underlying offense and the transcript indicates a five-year sentence on the underlying offense. When there is a conflict between the minute entry and the transcript, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732 (La.1983). Therefore, on remand, the trial court is ordered to correct
 
 *71
 
 the commitment on the underlying offense to conform with the transcript.
 

 Also, we find it is unclear as to whether defendant’s multiple offender sentence is to be served with or without hard labor. The commitment indicates that defendant was sentenced to ten years imprisonment pursuant to the Multiple Offender Statute; however, the transcript is unclear as to whether the sentence is to be served with or without hard labor. The transcript prevails when there is a discrepancy between the minutes and the transcript.
 
 State v. Lynch, supra.
 
 LSA-C.Cr.P. art. 879 requires a court to impose a determinate sentence. If the applicable sentencing statute allows the trial court discretion in determining whether or not to impose a sentence at hard labor, the failure to indicate whether the sentence is to be served at hard labor is an impermissible indeterminate sentence.
 
 State v. Norman,
 
 OS-794, p. 8 (La.App. 5 Cir. 3/14/06), 926 So.2d 657, 661,
 
 writ denied,
 
 06-1366 (La.1/12/07) 948 So.2d 145.
 

 In this case, defendant was adjudicated to be a third felony offender, which carries a sentence of imprisonment for not less than two-thirds of the longest possible sentence for the underlying conviction and not more than twice the longest possible sentenced prescribed for a first conviction. LSA-R.S. 15:529.1. The underlying statute, LSA-R.S. 40:966(E), provided that “hard labor” was discretionary with the sentencing judge. Thus, defendant’s sentence is indeterminate. Accordingly, the multiple offender sentence imposed by the trial | ancourt on defendant is hereby vacated and this matter is remanded for resen-tencing. See,
 
 State v. Duplichan,
 
 06-852 (La.App. 3 Cir. 12/6/06), 945 So.2d 170, 174.
 

 CONCLUSION
 

 For the foregoing reasons, defendant’s conviction is affirmed. Defendant’s multiple offender sentence is vacated. This matter is remanded to the trial court for correction of the commitment on defendant’s underlying sentence and for resen-tencing on defendant’s multiple offender conviction consistent with this opinion.
 

 CONVICTION AFFIRMED; MULTIPLE OFFENDER SENTENCE VACATED; REMANDED WITH INSTRUCTIONS
 

 [1]
 

 . On that date, defendant had two cases set for trial, the possession of marijuana case and a second case for distribution within “1,000 miles” [sic] of a school playground. The State, however, only went forward with the marijuana charge on that date and this appeal involves only the marijuana conviction.
 

 [2]
 

 . Miranda
 
 v.
 
 Arizona,
 
 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694(1966).
 

 [3]
 

 . Deputy Charles Krone, who was recognized by the court as an expert in forensic science with a specialty in drug analysis, testified that he received a sealed package from an evidence technician containing the suspected marijuana. Deputy Krone performed an exam on a sample of the contents of the package and concluded that its contents were positive for 1.15 grams of marijuana. A copy of Deputy Krone’s report of findings was entered into evidence.
 

 [4]
 

 . Defense counsel also stated at that time, "I will orally file a motion to reconsider sentence,” but the record does not reflect that a motion to reconsider sentence was actually made or filed, orally or otherwise. We do not consider this statement to be a motion to reconsider sentence.
 

 [5]
 

 .
 
 Boykin v. Alabama,
 
 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969).