FREDERICKA HOMBERG WICKER, Judge.
 

 |sIn this criminal proceeding, defendant/appellant Sean Smith appeals his possession with intent to distribute MDMA conviction and his 30-year habitual offender sentence. Mr. Smith assigned the following errors: (1) excessive sentence; (2) failure to comply with La.C.Cr.P. art. 894.1; (3) denial of motion to reconsider sentence; (4) in the alternative, if the motion to reconsider is deemed untimely, counsel was ineffective for failing to preserve the defendant’s rights to object to the sentence; and, (5) unconstitutional non-unanimous jury verdict. Finding no merit to the assigned non-unanimous jury verdict error, we affirm the conviction. Upon finding sentencing error patent, however, we pretermit the defendant’s remaining assigned sentencing errors, including ineffectiveness of counsel, vacate the habitual offender sentence, and remand for resentencing with instructions.
 

 The state charged Mr. Smith by Bill of Information with possession with intent to distribute a controlled dangerous substance — MDMA,
 
 [1]
 
 in violation of the La. R.S. 40:966(A), allegedly occurring on November 3, 2007. The defendant was tried by a 12-person jury which found him guilty as charged. At a later date, the Jjtrial judge sentenced the defendant to 15 years of hard labor.
 
 [2]
 
 After sentencing, the state filed a bill of information alleging
 
 *503
 
 that the defendant was a second felony-offender. After conferring with the defendant, defense counsel waived a reading of the bill and informed the court that the defendant was denying the allegations. A few months later, the trial court heard the habitual offender matter. The defendant did not testify at the hearing. At the conclusion of the hearing, the trial judge found the defendant to be a second felony offender. The trial judge vacated the 15-year sentence and imposed a 30-year sentence without benefit of probation or suspension of sentence. The defendant orally noticed his intent to appeal. The defendant filed a
 
 pro se
 
 motion for reconsideration of the sentence, which the trial judge denied. This timely appeal followed.
 

 FACTS
 

 The defendant was arrested during the early morning hours of November 3, 2007 after he attempted to enter a nightclub located on Monroe Street in Gretna, Louisiana. Following a search incident to arrest, a bag containing 25 pills was seized from the defendant’s pocket. A random sample of the pills tested positive for MDMA.
 

 At trial, Officer Alton Savage, Jr., the arresting officer, and Thomas Mason, the security guard/doorman at the club, testified similarly to the events that lead to the arrest. On the other hand, the defendant presented a different version of the events through the testimony of Brandon Cocker-ham and Cliffton Boullt, who testified that they accompanied the defendant to the nightclub.
 

 According to Officer Savage and Mr. Mason, the defendant created a disturbance during the course of a mandatory pat down required for entering the club. On the other hand, the defendant’s witnesses testified that when the 1 .^defendant was attempting to produce his identification, a fight erupted and everyone, including the defendant, was rushed out of the club. Officer Savage testified that to his knowledge there was no altercation occurring near his location at that time other than the incident with the defendant.
 

 Officer Savage of the Gretna Police Department testified that while in uniform on November 3, 2007, he was working a paid detail at the Caesar’s nightclub. Officer Savage stated a sign to the right of the main entrance doorway warned patrons that they were subject to a search. A photograph of the sign, which was introduced into evidence, states: “All persons and the objects in them possession are, upon entering site, subject to search. Entry constitutes consent to search.”
 

 Mr. Mason testified that in most instances, the written warning provided by the 8 x 10 white-laminated sign is also reinforced by a verbal warning that the patrons would be searched. Furthermore, Officer Savage stated that patrons have been verbally warned to leave contraband outside the club before entering. Mr. Boullt testified that he was aware that the patrons would be searched.
 

 Officer Savage stated that everyone must walk through a metal detector, which is positioned upon entry to the main club entrance door and located after the warning sign. After walking through the metal detector, the patron is greeted by a person who conducts a frisk.
 

 Mr. Mason explained that after the patrons proceed through the metal detector, they must approach him, provide identification and undergo a mandatory pat down for weapons. According to Officer Savage, there had been problems with narcotics and weapons at the club.
 

 Mr. Mason testified that patrons line up outside the club. Officer Savage testified that approximately 50 to 60 patrons were waiting to enter the club at the [(¡time of
 
 *504
 
 the incident. According to Mr. Mason, five or six people were allowed between the front door and the metal detector.
 

 Officer Savage testified that he was standing near the metal detector when he saw the defendant trigger a beep as the defendant walked through the metal detector. After the defendant produced his identification, the frisk took place. When Mr. Mason had patted down approximately half of the defendant’s person, the defendant attempted to push Mr. Mason’s hands away from the defendant’s body. Mr. Mason asked the defendant to calm down. Officer Savage was approximately five to seven feet from Mr. Mason at the time Mr. Mason asked the defendant to calm down. When the defendant failed to calm down, Officer Savage instructed the defendant to calm down. When the defendant did not comply, the officer handcuffed and arrested the defendant for disturbing the peace. He arrested him because he created a disturbance in the midst of several patrons inside the entrance and he refused to allow the frisk. He read him his
 
 Miranda
 
 rights and conducted a search incident to arrest in the club’s foyer. He recovered a clear plastic bag containing multi-colored pills from the defendant’s front right pocket.
 

 Mr. Mason and Officer Savage testified that the defendant produced his identification when Mr. Mason asked the defendant for the production. Mr. Mason stated that after the defendant produced his identification, Mr. Mason proceeded to conduct a pat down of the defendant’s person. However, when Mr. Mason reached the defendant’s pockets, the defendant pushed his hands away. After Mr. Mason told the defendant a search was required and inquired about the defendant’s problem, the defendant replied that Mr. Mason did not have to search him in that manner. Mr. Mason and the defendant exchanged words. According to Mr. Mason, the defendant started to “cuss and get loud.” Mr. Mason asked the defendant to calm down and he attempted to try the pat down once more. Officer |7Savage approached and inquired about the problem. The defendant replied that Mr. Mason did not have to check him in that fashion. Mr. Mason stated that Officer Savage told the defendant he had to be checked if he wanted to enter the club. In response, the defendant did not submit to being checked. Instead, he “made [a] scene” and was arrested. According to Mr. Mason, approximately four or five people were in line behind the defendant.
 

 Lieutenant Daniel Jewell, Jr., an expert in the field of packaging, value and distribution of controlled dangerous substances, testified that he had over 240 hours of training in the field of narcotics. In addition, he has participated in over 1000 narcotics-related investigations, including several undercover operations. He stated that the three primary factors used to distinguish personal use of a drug from distribution are packaging, quantity, and value. Lieutenant Jewell interchangeably referred to the drug that was seized in this case as “Ecstasy” or “MDMA,” He testified that MDMA tablets are occasionally individually wrapped, but at times unwrapped. With regard to the quantity of MDMA, he generally sees “very small amounts” for personal use. At most, a person could have three tablets for personal use. This is because a high from one tablet could last as long as 6-1/2 to 14 hours, depending on the person’s tolerance and the percentage of MDMA in the tablet.
 

 In this case, Officer Savage seized a clear plastic bag containing 25 multi-col-ored pills from the defendant’s front pocket. At trial, Officer Savage identified State’s Exhibit 2 as the package of pills
 
 *505
 
 that the officer recovered. Daniel Wag-uespack, the state’s expert in testing and analysis of controlled dangerous substances, testified that he conducted an analysis of a randomly selected sample of the 25 pills.
 
 [3]
 
 The tested sample indicated that the pills were composed of approximately 20% MDMA and 70% caffeine. Defense counsel asked Mr. |sWaguespack whether the remaining non-tested pills could have been vitamins or sugar pills. He replied that although he could not be “absolutely certain,” he doubted that “very seriously.”
 

 Lieutenant Jewell testified that even if a person had a high tolerance to MDMA and the tablet contained a low quantity of MDMA, three tablets would be the most that a person would have to maintain the high on the drug. According to Lieutenant Jewell, MDMA sells for $15 to $20 per pill.
 

 After considering the above evidence and testimony, the jury found the defendant guilty as charged of possession with intent to distribute MDMA.
 

 APPRENDI
 

 After the jury rendered its verdict, defense counsel requested a polling of the jury. The written poll, which is included in the record on appeal, revealed that the vote was 11-1 in favor of conviction. Mr. Smith argues that his guilty verdict is invalid because the non-unanimous verdict violates his right to a trial by jury under the United States and Louisiana Constitutions. In this regard, he argues that the 2000 case of
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) overruled by implication the holding in
 
 Apodaca v. Oregon,
 
 406 U.S. 404, 92 S.Ct. 1628, 1630, 32 L.Ed.2d 184 (1972).
 

 Defense counsel did not object to the verdict. Now, for the first time on appeal, the defendant argues an
 
 Apprendi
 
 violation renders the jury verdict invalid.
 

 In
 
 State v. Young,
 
 04-1318, pp. 13-14 (La.App. 5 Cir. 4/26/05), 902 So.2d 461, 470 and
 
 State v. Fasola,
 
 04-902, p. 18 (La.App. 5 Cir. 3/29/05), 901 So.2d 533, 544,
 
 writ denied,
 
 05-1069 (La.12/9/05), 916 So.2d 1055, this court declined to consider the defendants’ constitutional arguments that the conviction based on a non-unanimous verdict was invalid absent an objection raised in the trial court. |9Both cases relied on the Louisiana Supreme Court case of
 
 State v. Williams,
 
 02-1030, p. 7 (La.10/15/02), 830 So.2d 984, 988.
 

 In
 
 Williams,
 
 the Court pretermitted the defendant’s constitutional challenge as he failed to first raise the issue in the trial court.
 
 Williams
 
 recognized that the general rule established by that Court was that issues not submitted to the trial court for decision would not be considered by the appellate court on appeal. It held that Constitutional issues were no exception.
 
 Id.
 

 On the other hand, this court, while recognizing the general rule expressed in
 
 Williams,
 
 has nonetheless addressed, out of an abundance of caution, a constitutional issue regarding the habitual offender statute raised for the first time on appeal.
 
 State v. Myles,
 
 04-434, p. 9 (La.App. 5 Cir. 10/12/04), 887 So.2d 118, 12.
 

 Thus, there is uncertainty in our jurisprudence as to whether to pretermit constitutional issues that were raised for the first time on appeal. That uncertainty is also present in the jurisprudence from the Louisiana Supreme Court.
 

 
 *506
 
 As early as 1978, the Louisiana Supreme Court recognized the uncertainty in the jurisprudence regarding whether to address a constitutional issue (that is similar to the instant case) on the merits when the issue was raised for the first time by brief and argument on appeal.
 
 State v. Wrestle, Inc.,
 
 360 So.2d 831, 837, n. 9, (La.1978),
 
 overruled in part on other grounds, Burch v. Louisiana,
 
 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979). In
 
 Wrestle,
 
 the essential basis for the defendants’ contention was their attack on the constitutionality, under the federal constitution, of the provisions of state law which at that time permitted a non-unanimous verdict in six-person juries.
 
 Id.
 
 The Court decided to address the merits of the claim. It made no attempt to reconcile conflicting principles enunciated by the jurisprudence. It recognized “the uncertainty of the | ^jurisprudence,” but “because the constitutional error (if any) [was] based on a United States Supreme Court decision decided subsequent to the present conviction and [was] revealed by the minutes,” the Court deemed it “appropriate ... to consider the alleged constitutional error first raised in [that] court[.]”
 
 Id.
 

 More recently, the Louisiana Supreme Court reaffirmed the longstanding jurisprudential rule of law in Louisiana that litigants must raise constitutional attacks in the trial court, not the appellate courts, and the constitutional challenge must be specially pleaded and the grounds for the claim particularized.
 
 Unwired Telecom Corp. v. Parish of Calcasieu,
 
 03-0732 (La.1/19/05), 903 So.2d 392, 399, n. 5
 
 (on rehearing).
 
 In doing so, however, the Court noted the following exceptions to the general rule: (1) when a statute attempts to limit the constitutional power of the courts to review cases; (2) when the statute has been declared unconstitutional in another case; (3) when the statute applicable to the specific case becomes effective after the appeal is lodged in the higher court; or (4) when an act which is the basis of a criminal charge is patently unconstitutional on its face and the issue is made to appear as an error patent on the face of the record.
 
 Id.
 
 (citation omitted).
 
 See also: Mallard Bay Drilling, Inc. v. Kennedy,
 
 04-1089, p. 9 (La.6/29/05), 914 So.2d 533, 541. Therefore, the uncertainty in this area arises as a result of jurisprudential exceptions to the general rule.
 

 In the present case, the thrust of the defendant’s argument is that the codal article and the Constitutional article have been impliedly declared unconstitutional by
 
 Apprendi.
 
 As such, the defendant has arguably alleged an exception to the general rule pretermitting review on the merits of his constitutional claim. Cognizant of this exception, the First Circuit reviewed the merits of a claim not presented below on the basis that “[s]ince the statute at issue in this case has since been declared unconstitutional in another case, the plaintiff may raise the | nunconstitutionality of the statute for the first time on appeal.”
 
 Spooner v. East Baton Rouge Parish Sheriff Dept.,
 
 01-2663, p. 3 (La.App. 1 Cir. 11/8/02), 835 So.2d 709, 710.
 

 In
 
 Young
 
 and
 
 Fasola,
 
 unlike the present case, the defendants evidently failed to argue that
 
 Apprendi
 
 overruled the pertinent constitutional and codal provisions. Thus,
 
 Young
 
 and
 
 Fasola
 
 are distinguishable.
 

 Therefore, under the authority of the Louisiana Supreme Court jurisprudence that recognizes the exception to the general rule pretermitting review, we must consider whether
 
 Apprendi
 
 has overruled Louisiana’s codal and constitutional authority validating a non-unanimous jury verdict for crimes necessarily punishable by hard labor. Finding that the constitu
 
 *507
 
 tional issue is properly before this Court, we have complied with jurisprudential and statutory attorney general notification requirements.
 
 See:
 
 La.R.S. 49:257(B); La. R.S. 13:4448;
 
 State v. Schoening,
 
 00-903, p. 5 (La.10/17/00), 770 So.2d 762, 765-66 (“[T]he attorney general should be served a copy of the pleading which contests the constitutionality of a statute, so that he may choose whether or not to exercise his right to represent the state’s interest in the proceedings.” (Internal quotation omitted, footnote omitted.)).
 

 The state and the attorney general have filed an opposition to the constitutional challenge. For the reasons that follow, we find no constitutional error in the verdict.
 

 La.C.Cr.P. art. 782(A) authorizes a non-unanimous 10-2 jury verdict when the offense is one that is necessarily punishable by hard labor as in this case: “Cases in which punishment is necessarily confinement at hard labor shall be tried [ 12by a jury composed of twelve jurors, ten of whom must concur to render a verdict.” This article is the counterpart to Louisiana Constitution, Article 1, § 17(A).
 
 [4]
 

 In
 
 Apodaca v. Oregon,
 
 406 U.S. 404, 405-406, 92 S.Ct. 1628, 1630, 32 L.Ed.2d 184 (1972), the United States Supreme Court held that a state court conviction of a crime by less than a unanimous jury does not violate the right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. In
 
 State v. Jones,
 
 381 So.2d 416, 418 (La.1980), the Louisiana Supreme Court ruled that Article 782 did not violate the right to trial by jury guaranteed by the Sixth and Fourteenth Amendments. More recently, in 2009, the Louisiana Supreme Court found that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments.
 
 State v. Bertrand,
 
 08-2215 (La.3/17/09), 6 So.3d 738.
 

 The defendant relies on The United Supreme Court decisions of
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002);
 
 Apprendi, supra;
 
 and
 
 Jones v. United States,
 
 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) to support his proposition that a non-unanimous jury verdict violates his constitutional right to a jury trial. In
 
 State v. Caples,
 
 05-2517, p. 15 (La.App. 1 Cir. 6/9/06), 938 So.2d 147, 156-57,
 
 writ denied,
 
 06-2466 (La.4/27/07), 955 So.2d 684, the defendant argued that in light of recent United States Supreme Court decisions upon which Mr. Smith also relies, his conviction should have been by a unanimous twelve-person jury. The
 
 Ca-píes
 
 defendant argued that La. Const, art. I, § 17 and La.C.Cr.P. art. 782(A) were unconstitutional pursuant to recent United States Jurisprudence. The First Circuit held:
 

 | isThe defendant’s reliance upon
 
 Blakely [v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) ],
 
 Ring, Apprendi
 
 and
 
 Jones
 
 is misplaced. Those decisions do not address the issue of the constitutionality of a non-unanimous jury verdict; rather, they address the issue of whether the assessment of facts in determining an increased penalty of a crime beyond the prescribed
 
 *508
 
 statutory maximum is within the province of the jury or the trial judge, sitting alone. They stand for the proposition that any fact (other than a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.
 
 See Apprendi v. New Jersey,
 
 530 U.S. at 490, 120 S.Ct. at 2362-2363. Nothing
 
 in
 
 the referenced decisions suggests that the jury’s verdict must be unanimous for a defendant’s sentence to be increased. Accordingly, Louisiana Constitution article I, § 17(A) and La.Code Crim. P. art. 782(A) are not unconstitutional and, hence, not violative of the defendant’s Sixth Amendment right to trial by jury.
 

 05-2517 at 15-16, 938 So.2d at 157.
 
 Accord: State v. Smith,
 
 06-0820, p. 24 (La. App. 1 Cir. 12/28/06), 952 So.2d 1, 16,
 
 writ denied,
 
 07-0211 (La.9/28/07), 964 So.2d 352.
 

 In
 
 State v. Juniors,
 
 05-649, pp. 19, 19, n. 3 (La.App. 3 Cir.12/30/05), 918 So.2d 1137, 1148, 1148, n. 3,
 
 unit denied,
 
 06-0267 (La.9/15/06), 936 So.2d 1257,
 
 cert. denied Juniors v. Louisiana,
 
 549 U.S. 1226, 127 S.Ct. 1293, 167 L.Ed.2d 110 (2007), the Third Circuit rejected the defendant’s argument that
 
 Apodaca
 
 has been implicitly overruled by recent jurisprudence from the United States Supreme Court. The court noted that the United States Supreme Court has not expressly questioned its ruling in
 
 Apodaca
 
 and, further, that the cases cited by the defendant
 
 (Apprendi, Blakely, Ring,
 
 and Jones) do not address whether a unanimous jury verdict is required. Instead, those cases concern what issues must be decided by a jury.
 
 Id.
 

 In
 
 State v. Malone,
 
 43,548, p. 6 (La.App. 2 Cir. 11/19/08), 998 So.2d 322, 327, the Second Circuit rejected the defendant’s argument that more recent cases have called into question the viability of a less than unanimous jury verdict expressed in
 
 Apo-daca.
 

 |14Finally, in
 
 State v. Tillman,
 
 08-0408, p. 25 (La.App. 4 Cir. 3/4/09), 7 So.3d 65, 77 the Fourth Circuit, relying on jurisprudence from the First Circuit, rejected a similar argument raised by the defendant in
 
 Tillman.
 

 We agree with the First, Second, Third, and Fourth Circuits that the defendant’s reliance on recent
 
 post-Apodaca
 
 United States jurisprudence to question the viability of a less than unanimous jury verdict is misplaced. In
 
 Apprendi,
 
 the Supreme Court expressly reaffirmed its holding in
 
 Jones
 
 and held that the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment required that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”
 
 Apprendi,
 
 120 S.Ct. at 2355, 2362-63. In
 
 Ring,
 
 the Supreme Court held under
 
 Apprendi
 
 that Arizona’s capital sentencing scheme violated the Sixth and Fourteenth Amendments because the jury found all of the facts necessary to convict the defendant of first-degree murder, but the trial court found the aggravating circumstance necessary to punish the defendant with death.
 
 Ring,
 
 122 S.Ct. at 2432, 2443. None of these cases indicate in any way that that they overrule
 
 Apodaca.
 

 Accordingly, this assignment lacks merit.
 

 SENTENCING
 
 ERROR
 
 PATENT
 

 We have reviewed the record for errors patent in accordance with La. C.Cr.P. art. 920.
 
 See: State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). On error patent review, we find that the defendant received an illegally lenient sen
 
 *509
 
 tence because the trial judge did not impose the disability against parole. The state correctly notes that the trial judge failed to restrict at least five years of the defendant’s sentence from benefit of hsparole eligibility, as required by the underlying offense. The court ordered that the entire habitual offender sentence be served without benefit of probation, or suspension of sentence for the entire term, as is required under La.R.S. 15:529.1(G). The underlying conviction that was enhanced in this matter was for possession with intent to distribute MDMA, in violation of La.R.S. 40:966(A). In pertinent part, La.R.S. 40:966(B)(2) mandates imprisonment at hard labor for not less than five nor more than 30 years, at least five of which shall be served without benefit of parole, probation, or suspension of sentence. As such, for the underlying conviction, the defendant faced a sentence imposing imprisonment for not more than 30 years of imprisonment, with at least five years without the statutory benefits, including parole restriction. However, because the underlying offense carried a disability against parole, the habitual offender sentence is to likewise be imposed without parole.
 
 State v. Bruins,
 
 407 So.2d 685, 687 (La.1981).
 
 Accord, State v. Singleton,
 
 03-1307, p. 5 (La.App. 5 Cir. 3/30/04), 871 So.2d 596, 599. Since the trial court did not restrict parole in any way in imposing the enhanced sentence,
 
 [5]
 
 and the statute requires an exercise of the trial court’s sentencing discretion in limiting parole eligibility, we vacate the defendant’s sentence and remand this case for re-sentencing in accordance with the underlying statute.
 
 See: State v. Alexander,
 
 08-580, p. 11 (La.App. 5 Cir. 2/25/09), 8 So.3d 732, 739,
 
 citing State v. Tapps,
 
 02-0547, pp. 13-14 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1004,
 
 unit denied,
 
 02-2921 (La.4/21/03), 841 So.2d 789.
 

 Since this matter is being remanded for resentencing, we feel it prudent to instruct the trial judge in two respects; namely, advice regarding the prescriptive period for filing post-conviction relief and compliance with La.C.Cr.P. art. 894.1.
 

 | lfiLa.C.Cr.P. art. 894.1 sets forth factors that the trial judge should consider in imposing a sentence of imprisonment. The trial judge need not recite the entire checklist, but the record must reflect that the trial judge adequately considered the criteria.
 
 State v. Smith,
 
 433 So.2d 688, 698 (La.1983). On appeal, the defendant complains that the trial failed to consider the sentencing factors. We pretermit this assignment as premature since we vacate the sentence and remand for resentencing. On remand, however, we instruct the trial judge to impose sentence in compliance with Article 894.1.
 

 La.C.Cr.P. art. 930.8(A) provides:
 

 A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
 

 The trial judge gave the defendant confusing advice regarding the commencement of the prescriptive period for filing post-conviction relief. In the first instance — at the original sentencing — the trial judge correctly informed the defendant that the two-year period commenced from the date that his conviction and sentence became final. On the second occa
 
 *510
 
 sion — the habitual offender sentencing— the trial judge stated that the prescriptive period commenced from the date of the sentencing, which was the date that the defendant’s sentence and conviction became final.
 
 [6]
 
 According to La.C.Cr.P. art. 930.8(A), the period commences not from the date of sentencing but rather from the date that the sentence and conviction become final. Advice that the period commences from the date of sentencing is incomplete.
 
 State v. George,
 
 99-887, p. 5 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975. Therefore, the trial judge’s advice regarding the prescriptive period is confusing regarding the time that the period commences. As 117such, on remand for resen-tencing, we instruct the trial judge that upon resentencing the defendant, the trial judge provide a clear and unambiguous advisal regarding the commencement of the prescriptive period in compliance with La.C.Cr.P. art. 930.8(A).
 

 CONCLUSION
 

 For the foregoing reasons, the defendant’s conviction is affii’med. His sentence is vacated and the matter remanded for resentencing in accordance with this opinion.
 

 CONVICTION AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED;REMANDED FOR RESENTENC-ING WITH INSTRUCTIONS.
 

 [2]
 

 . Although the sentence was illegally lenient since only two, rather than five years was imposed without the statutory benefits of parole, probation, and suspension of sentence in accordance with La.R.S. 40:966(B)(2), the trial judge later vacated the sentence and thereby rendered any error patent moot.
 

 [3]
 

 . Louisiana jurisprudence accepts the use of such random sampling of substances for identification as controlled dangerous substances.
 
 State v. White,
 
 98-91 (La.App. 5 Cir. 6/30/98), 715 So.2d 714,
 
 writ denied,
 
 98-2043 (La. 11/25/98), 729 So.2d 577.
 

 [4]
 

 . La. Const, art. 1, § 17(A) pertinently provides:
 

 A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict.
 

 [5]
 

 . The commitment/minute entry, however, states that the entire sentence was imposed with a parole disability. The transcript controls.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 [6]
 

 .
 
 Although the commitment/minute entry recites that the trial judge gave the proper advi-sal, the transcript, which indicates otherwise, governs.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La. 1983).