FREDERICKA HOMBERG WICKER, Judge.
li>The defendant appeals his conviction and sentence for attempted simple escape. He argues that the trial court erred by denying his motion to quash the bill of information. He further challenges the sufficiency of the evidence and the legality of his multiple-offender sentence. For the reasons that follow, the conviction and sentence is affirmed.
Factual and Procedural Background
On February 4, 2009, Officer Jeffrey Reyes of the Gretna Police Department enrolled the defendant/appellant, Mr. Elbert Chinn, Jr., into the home incarceration program. Mr. Chinn signed a document entitled “Certificate Rules and Regulations,” which Officer Reyes read aloud to him “word-for-word.” The certificate explained the rules of the program and specifically stated in paragraph 11. “UJf a defendant is not at their place of legal confinement or work location at \%scheduled times and cannot be contacted, the defendant will be deemed a simple escapee. An arrest warrant will be issued for the defendant for violation of L.R.S. U:110.A.l (Simple Escape).”
On April 9, 2009, Officer Phillip Wiebelt, Mr. Chinn’s supervisor in the program, received notification that Mr. Chinn’s monitoring equipment was no longer connected to the telephone service. Upon receiving this notification, Officer Wiebelt called Mr. Chinn on both his home and cell phones but did not get an answer. He then left a voice mail message on the cell phone and asked Mr. Chinn to call him back as soon as possible. The next day, April 10, 2009, Officer Wiebelt called Mr. Chinn again and left another voice mail message on the cell phone. He then went to Mr. Chinn’s address in his unmarked unit, which contained a drive-by system. The drive-by system was capable of detecting the ankle monitoring bracelet if located within a 150-foot range of the system. The drive-by system, however, did not detect the ankle bracelet, and no one answered Mr. Chinn’s door.
Officer Wiebelt telephoned Mr. Chinn again on April 11th but did not get an answer. He called back on April 12th and received the operator message stating that the cell phone number was no longer in service. Officer Wiebelt, accompanied by *422 Officer Hightower, returned to Mr. Chinn’s home on April 13, 2009, around 10 A.M. Again, no one answered the door. However, a neighbor informed the officers that no one lived there anymore. Officer Wiebelt then issued a warrant for Mr. Chinn’s arrest. The next day, April 14, 2009, shortly before midnight, Mr. Chinn was arrested for the outstanding warrant when a vehicle in which he was riding as a passenger was pulled over for a traffic violation. Mr. Chinn was taken to jail. Officer Wiebelt removed the ankle bracelet the following day when he arrived for his shift.
|4Mr. Chinn was subsequently charged by bill of information with simple escape, in violation of La. R.S. 14:110 on May 21, 2009. He pled not guilty at the arraignment and moved to quash the bill of information. He alleged that the bill was defective because the proper remedy for a violation of home incarceration was imprisonment as opposed to new criminal charges of simple escape. The State opposed the motion and relied upon the district court’s ruling in State v. Stanley Thompson, in which both this Court and the Louisiana Supreme Court denied writs. State v. Thompson, 08-0443 (La.App. 5 Cir. 6/26/08) (unpublished writ), writ denied, 08-1581 (La.7/16/08), 986 So.2d 69.
In this case, the trial court relied on Thompson, supra and, likewise, denied Mr. Chinn’s motion to quash on March 25, 2010. Thereafter, the case proceeded to trial, and a six-person jury found Mr. Chinn guilty of the lesser offense of attempted simple escape. Mr. Chinn then filed a motion to reconsider sentence, as well as a motion for new trial. Both motions were denied. Mr. Chinn was sentenced to imprisonment at hard labor for a term of one year and three months. The sentence was ordered to be served consecutively with the sentence he received in case 08-6437. The State filed a multiple-bill, alleging Mr. Chinn to be a second-felony offender. And at the multiple-bill hearing, Mr. Chinn was adjudicated to be a second-felony offender. The trial court then vacated the original sentence imposed pursuant to La. R.S. 15:529.1 and resen-tenced him to one year and three months at hard labor without probation or suspension of sentence. The sentence was to run consecutively with the sentence imposed in 08-6437.
Assignments of Error
In his counseled assignment of error, Mr. Chinn contends that the trial court erred in denying the motion to quash. Mr. Chinn further contends, pro se, that the | ¿State failed to prove beyond a reasonable doubt that he committed simple escape. He also challenges the legality of his multiple-offender sentence.
Discussion

First Assignment of Error

In his first assignment of error, Mr. Chinn contends that the trial court erred by denying the motion to quash. Specifically, he contends that a sentence to the home incarceration program, as a condition of or in lieu of bond, does not constitute “custody” for purposes of the simple escape statute. He contends that the proper remedy for a violation of home incarceration is to initiate contempt and bail revocation proceedings after a contradictory hearing.
La. R.S. 14:110(A) provides, in pertinent part, that simple escape is:
A. The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforce *423 ment officer or officer of the Department of Public Safety and Corrections.
D. For purposes of this Section, a person shall be deemed to be in the lawful custody of a law enforcement officer or of the Department of Public Safety and Corrections and legally confined when he is in a rehabilitation unit, a work release program, or any other program under the control of a law enforcement officer or the department. (Emphasis Added).
Thus, section D deems someone to be in “lawful custody” of the Department and “legally confined” when he is in “any other program under the control of a law enforcement officer or the department.” A close reading of La.C.Cr.P. art. 894.2, specifically article 894.2(B)(1), reveals that the home incarceration program is, in fact, under the control of the Department of Public Safety and Corrections.[1] Yet, | fiMr. Chinn contends that he was not in lawful custody even though he was being supervised by the Gretna Police Department.
This Court has previously held, however, that the simple escape statute does apply to home incarceration. In State v. Hillard, 02-1155 (La.App. 5 Cir. 1/7/03) (unpublished writ), writ denied, 03-0355 (La.3/14/03), 839 So.2d 50, the defendant sought supervisory review of the trial court’s denial of his motion to quash the bill of information that charged him with simple escape from the home incarceration program. There, we stated, “the simple escape statute, La. R.S. 14:110 D, applies to the Home Incarceration Program, even though the Gretna Police Department supervised the Defendant’s Home Incarceration.” Likewise, in Thompson, supra, we denied the defendant’s application for supervisory review after finding that the trial court did not err in denying the motion to quash the bill which charged him with simple escape from home incarceration.
Mr. Chinn, however, relies upon La.C.Cr.P. art. 894.2 to argue that the trial court should have conducted a contradictory hearing prior to acting on the alleged violation of home incarceration. La.C.Cr. P. art. 894.2(1) provides: “[i]f the defendant violates the conditions of home incarceration, the court, on motion of the state or its own motion, may, after contradictory hearing modify or impose a sentence of imprisonment.” Mr. Chinn’s reliance on this article, however, is misplaced.
La.C.Cr. P. art. 894.2 provides that a defendant may be placed on home incarceration in lieu of bond or after conviction of a misdemeanor or felony under certain conditions. The record in this case is unclear as to why Mr. Chinn was placed on home incarceration, although he contends it was in 17lieu of bond. In any regard, he was placed on home incarceration for committing a separate offense and not for the offense of simple escape. Therefore, once he violated the rules and regulations of the home incarceration program, the court could have, after contradictory hearing, modified or imposed a sentence of imprisonment for the underlying offense. The underlying offense, however, is not before this Court in this appeal. Rather, this appeal involves the offense of simple es *424 cape, which we have already stated, was properly charged in this case.
Mr. Chinn further argues that because he was placed on home incarceration in lieu of bond, the bail should have been revoked pursuant to La.C.Cr.P. art. 335. Again, whether or not bail should have been revoked relates to the underlying offense to which Mr. Chinn was placed on home incarceration, and not the offense of simple escape. Therefore, this assignment of error is without merit.

Second Assignment of Error

In his first pro se assignment of error, Mr. Chinn contends that the evidence was insufficient to support a conviction for attempted simple escape.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In order to support a conviction for simple escape, the State must prove (1) an intentional departure (2) under circumstances wherein human life is |snot endangered (3) by a person detained (4) from the lawful custody of any law enforcement officer. State v. Bullock (La.1991), 576 So.2d 453, 455.
In this case, the State presented Mr. Chinn’s signed “Certificate Rules and Regulations” which outlined the rules of the home incarceration program. As part of home incarceration, Mr. Chinn was permitted to be away from his home on Mondays, Tuesdays, and Thursdays from 9:00 A.M. to 5:00 P.M. to look for work. Officer Wiebelt testified, however, that Mr. Chinn was unmonitored from Thursday, April 9, 2009 through Monday, April 13, 2009. Mr. Chinn explained why the system did not detect him through the testimony of several witnesses who testified that he had no electricity or phone service during that time. But even if Mr. Chinn had no electricity at his home, Officer Wiebelt testified that he went to Mr. Chinn’s residence on Friday, April 10, 2009, a day that he was required to be at home, and no one answered. Furthermore, Mr. Chinn was arrested outside of his home on Tuesday, April 14, 2009, after 5:00 P.M., when he and his girlfriend were returning home from purchasing chicken. Although Mr. Chinn may have experienced some discomfort without electricity, the lack of electricity, in and of itself, does not endanger human life so as to justify his departure from his home.[2]
The evidence in this case clearly indicates that Mr. Chinn was detained under home incarceration under the supervision of Officer Wiebelt of the Gretna Police Department and that he was subsequently arrested on April 14, 2009, during a time in which he was supposed to be at his residence. A review of a criminal conviction record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt *425 beyond a reasonable doubt. Id. Based on the record presented in this case, the jury could have reasonably found that Mr. Chinn committed the offense of attempted simple escape beyond a reasonable doubt. Therefore, this assignment of error is without merit.

Third Assignment of Error

Finally, Mr. Chinn challenges the legality of the multiple-offender sentence. He contends that the sentence is illegal because the State failed to enter on the record which rights he specifically waived when he pled guilty to the predicate offense.
When the State relies on a prior conviction that is based on a guilty plea in proving a defendant’s multiple offender status, and the defendant denies the allegations of the multiple bill, the State bears the burden of proving the existence of the prior guilty plea and that the defendant was represented by counsel when it was taken. State v. Shelton, 621 So.2d 769 (La.1993). Once the State meets this burden, the defendant must produce affirmative evidence of an infringement of his rights or of a procedural irregularity. Id. at 779. If the defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea, that is, that the plea was knowing and voluntary. Id. This final burden can be met if the State produces a “perfect transcript” articulating the Boykin colloquy between the defendant and the trial judge or any combination of a guilty plea form, a minute entry, or an “imperfect” transcript. Id. at 779-80; State v. Collins, 04-255, p. 6 (La.App. 5 Cir. 10/12/04), 886 So.2d 1149, 1154, writ denied, 04-2798 (La.3/11/05), 896 So.2d 62. If anything less than a “perfect” transcript is presented, the trial court must weigh the evidence submitted by the defendant and | inthe State to determine whether the State met its burden of proof that defendant’s prior guilty plea was informed and voluntary. Id.
In this case, the multiple offender bill of information alleged that Mr. Chinn had one prior felony conviction — second offense possession of marijuana — to which he pled guilty in 2001. The State did not present a “perfect transcript” at the multiple bill hearing; rather, it presented Mr. Chinn’s well-executed guilty plea form and the minute entry. The plea form, which Mr. Chinn initialed several times, stated that he understood and waived his three Boykin rights. The form was also signed by Mr. Chinn, his defense counsel, and the trial judge. Jurisprudence has held that the minute entry and plea form provide an “affirmative showing in the record that the accused made a knowing and voluntary waiver of his rights.” Shelton, supra, at 777. Therefore, this assignment of error is without merit.
Error Patent Discussion
We have reviewed the record for errors patent in accordance with La.C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337 (La. 1975). Our review reveals that there are errors patent which do not require corrective action.
We first note that the original commitment appears to be inconsistent with the transcript. The original commitment reflects that the trial court ordered Mr. Chinn’s original sentence to run consecutively to the sentence in ease number OS-6437; however, the transcript reflects that the trial court ordered his original sentence to run consecutively to any other sentence. Because the original sentence was vacated at the multiple-offender hearing, it appears that any patent errors relating to the original sentence are moot. See State v. Smith, 09-100, p. 4 (La.App. 5 Cir. 8/25/09), 20 So.3d 501, 502 n. 2, writ denied, 09-2102 (La.4/5/10), 31 So.3d 357.
*426 |nNext, we note that the trial judge failed to arraign Mr. Chinn on the multiple offender bill of information.
The Multiple Offender Statute directs the trial court to order the defendant to appear before it, inform the defendant of the allegations contained in the bill of information, of his right to be tried as to the truth, and to require the offender to comment on the truth of the allegations. La. R.S. 15:529.1(D)(l)(a). Implicit in the statute is the requirement of the court to advise the defendant of his right to remain silent. State v. Allen, 93-838, p. 16 (La. App. 5 Cir. 5/31/94), 638 So.2d 394, 403. However, La.C.Cr.P. art. 555 states:
[A]ny irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.
This Court has consistently held that when a defendant proceeds to a multiple offender hearing without objecting to the lack of arraignment, any error in the failure to arraign is waived. Allen, supra; State v. Harris, 01-1380 (La.App. 5 Cir. 4/30/02), 817 So.2d 387, 389; State v. Evans, 02-1108, p. 6 (La.App. 5 Cir. 3/11/03), 844 So.2d 111, 115. Additionally, this Court has held that the failure of the trial court to advise the defendant of his right to remain silent is harmless error when the defendant remains silent and his multiple offender status is established by competent evidence offered by the State at the hearing, rather than by the defendant’s admission. Allen, supra.
In this case, Mr. Chinn proceeded to the multiple offender hearing without objecting. He, therefore, waived any procedural irregularity or error in the failure to arraign. La.C.Cr.P. art. 555. Moreover, the record indicates that Mr. Chinn did not testify or make any comments during the multiple bill hearing. Therefore, the 112trial court’s failure to advise him of the allegations against him and of his right to be tried and to remain silent was harmless error. Evans, supra.
For the foregoing reasons, the conviction and sentence is affirmed.

AFFIRMED

. La.C.Cr.P. art. 894.2(B)(1) provides, "A defendant ordered to home incarceration shall be supervised and may be subject to any of the conditions of probation. Every provider of home incarceration supervision or electronic monitoring services shall submit information to the court, the sheriff of the parish, and the Department of Public Safety and Corrections. The Department of Public Safety and Corrections is authorized to establish regulations to develop a uniform reporting format and procedures for providers of home incarceration in order to promote efficiency and uniformity in data collection."

. Furthermore, paragraph four of "Certificate Rules and Regulations” states, "If you are faced with a PERSONAL LIFE THREATENING EMERGENCY, attend to the emergency and notify your case officer as soon as possible. Proof of the emergency WILL BE REQUIRED and MUST BE PROVIDED TO YOUR CASE OFFICER.” Officer Wiebelt testified that Mr. Chinn did not contact him from April 9, 2009 — April 13, 2009.