# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

### 2019 KA 1543

## STATE OF LOUISIANA

### VERSUS

## MIRANDA CHEYENNE GILLEY

Judgment Rendered:     JUL 1 7 2020

Appealed from the
Thirty-Second Judicial District Court
In and for the Parish of Terrebonne
State of Louisiana
Docket Number 756100

Honorable George J. Larke, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

Joseph L. Waitz, Jr.
J. Christopher Erny
Ellen Daigle Doskey
Houma, LA

Counsel for Appellee,
State of Louisiana

Cynthia K. Meyer
New Orleans, LA

Counsel for Defendant/Appellant,
Miranda Cheyenne Gilley

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE:   WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1]Honorable William J. Burris, retired, is serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**WHIPPLE, C.J.**

The defendant, Miranda Cheyenne Gilley, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. She pled not guilty. Following a jury trial, she was found guilty of the responsive (lesser and included) offense of manslaughter, a violation of LSA-R.S. 14:31. She moved for a post-verdict judgment of acquittal and a new trial, but the motions were denied. She was sentenced to twenty-three years at hard labor.

The defendant now appeals, briefing the following assignments of error:

1. The evidence is insufficient to support the verdict of manslaughter.

2. The trial court erred in failing to fully instruct the jury on justifiable homicide.

3. The twenty-three year sentence imposed in this case is excessive.

4. The jury verdict should be declared invalid because the non-unanimous verdict is contrary to the defendant's rights to due process and equal protection and violates the Sixth and Fourteenth Amendments of the United States Constitution.

For the following reasons, we vacate the conviction and sentence and remand this matter to the district court for further proceedings.

## FACTS

On July 11, 2017, the defendant fatally stabbed the victim, Jessica R. McGehee, at the Belmere Apartments in Terrebonne Parish. The victim was unarmed. At the time of the incident, the victim had been in a relationship with William Alexander for approximately three years. Alexander was also seeing the defendant. Approximately one month before the incident, the victim saw pictures of Alexander and the defendant on Instagram.

Dr. Yen Van Vo, a forensic pathologist with the Terrebonne Parish Coroner's Office, performed the autopsy of the victim. The cause of death was multiple stab

2

wounds. At the time of her death, the victim was 24 years old, 63 inches tall, and weighed 148 pounds. She suffered five stab wounds and two cuts. She was stabbed in the left cheek, below the left eye, with the wound penetrating approximately one-and-one-quarter inches. She was also stabbed in the left side of the chest, through a rib, through the left lung, and into the left side of the heart, with the wound penetrating three-and-one-quarter inches. Absent immediate surgical intervention, the likelihood of survival from this wound was "very low." The victim was also stabbed on the right side of her lower back, with the wound penetrating approximately two-and-one-half inches. Additionally, the victim was stabbed twice on the right side of her right buttocks. She also had two incise wounds or cuts on the back of her left arm. These wounds were consistent with "defensive wounds." The defendant's folding "Gerber" knife with a black handle and two-and-one-half inch blade was capable of inflicting wounds consistent with the victim's wounds.

Taylor Brown witnessed the incident. He testified that prior to the stabbing, the defendant looked at him and his friends and stated, "[i]f you don't get [the victim] away from me, I will stab her." Taylor claimed the victim got on top of the defendant during the incident and was "[b]eating [the defendant's] head in." Taylor stated he saw the defendant's arm swinging in "a backward motion with the knife. It was like coming back." According to Taylor, after stabbing the victim, the defendant told her "I just shanked you in your stomach."

Hayes Brown also witnessed the incident. He testified that the defendant dropped her knife after the first fight, but picked it up prior to the stabbing. Hayes stated the defendant stabbed the victim before and after they went to the ground. Prior to the stabbing, Hayes heard the defendant state, "I'm not fighting no more. I'm going to stab someone." Hayes indicated the victim was 20 to 30 feet away from the defendant when the statement was made.

3

Joseph Wiggins also witnessed the incident. He stated the stabbing occurred after the defendant and the victim grabbed each other and threw each other around. According to Wiggins, the defendant and the victim were standing when the defendant stabbed the victim between five and nine times. Prior to the stabbing, Wiggins heard the defendant say "something about she was going to get a knife and stab [the victim]." Wiggins could not remember if the defendant had a knife on her at the time she made the statement or if she "ran somewhere and grabbed a knife." Wiggins testified that prior to the stabbing, "it was nothing but a little scratch fight really, just pulling hair and throwing each other around and stuff." Wiggins indicated the victim was "definitely getting the best of [the defendant]." He further indicated, however, "[i]t wasn't no bad-ass whipping, not enough to make you want to pull out a knife and stab somebody, that's for sure."

The defendant also testified at trial. She was 23 years old, 62 inches tall and, at the time of the incident, weighed 105 pounds. On the day of the incident, Alexander told her he had lied about having ended his previous relationship with the victim. Thereafter, the defendant messaged the victim on Instagram about Alexander. After repeated exchanges of messages, the defendant messaged her telephone number to the victim "so [the victim] would stop messaging [the defendant]." The victim called the defendant, and the defendant put her on speakerphone so the victim could "go off on [the defendant]." During the phone conversation, the defendant's mother, Miranda Swartz, stated they lived at "Belmere." The defendant denied she invited the victim over for a fight and claimed that after talking to the victim, she called Alexander and told him, "if [the victim] showed up, it wasn't going to be good[.]" The defendant denied stating she was going to stab the victim.

4

According to the defendant, she observed the victim approach Swartz while she was smoking a cigarette by the stairway. The defendant claimed the victim screamed at Swartz demanding she tell her the defendant's whereabouts. The defendant claimed she went to assist Swartz after the victim began pushing her. The defendant was carrying a knife on her hip. According to the defendant, she "grab[bed] [the victim] and pull[ed] her off" Swartz, and the victim grabbed the defendant and threw her on the ground. This fight consisted of hair pulling and punching, but no stabbing. The women were separated, and the victim and her friend, Ashley Pitre, walked to Pitre's car.

The defendant claimed she then saw Pitre running "back up on [Swartz]" and saw the victim "running up on [the defendant]." According to the defendant, she "pulled" her knife after the victim took her to the ground, was on top of her, and was hitting her in the head. The defendant testified, "[a]s I pull my knife, I just, just was swinging it just to try to get [the victim] off of me." The defendant stated, "I just didn't know if it was going to stop. I didn't know if it was going to be broke up. I - - I was – I was afraid." She denied ever intending for the victim to "come over that night[,]" denied wanting to kill the victim, and denied intending to kill the victim.

On cross-examination, the defendant indicated she did not recall if she had her knife out before she went to the ground with the victim. Thereafter, after reviewing her earlier statement, the defendant conceded it was "possible" she had her knife out before she and the victim went to the ground.

## SUFFICIENCY OF THE EVIDENCE

In assignment of error number 1, the defendant contends the evidence was insufficient to support the conviction because (1) the State failed to prove specific intent to kill or to inflict great bodily harm; and (2) she was swinging the knife to get the victim off of her and acting in self-defense at the time of the stabbing.

5

When issues are raised on appeal contesting the sufficiency of the evidence and alleging one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So. 2d 731, 734 (La. 1992); State v. Duhon, 2018-0593 (La. App. 1st Cir. 12/28/18), 270 So. 3d 597, 609, writ denied, 2019-0124 (La. 5/28/19), 273 So. 3d 315; see also State v. Self, 98-39 (La. App. 3rd Cir. 8/19/98), 719 So. 2d 100, 101, writ denied, 98-2454 (La. 1/8/99), 734 So. 2d 1229. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 43, 101 S. Ct. 970, 67 L. Ed. 2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proven beyond a reasonable doubt. Hearold, 603 So. 2d at 734; Duhon, 270 So. 3d at 609. When the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion of trial error issues as to that crime would be pure dicta since those issues are moot. However, when the entirety of the evidence is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the other assignments of error to determine whether the accused is entitled to a new trial. If the reviewing court determines that there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused will be granted a new trial, but is not entitled to an acquittal. See Hearold, 603 So. 2d at 734, Duhon, 270 So. 3d at 609.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v.

Virginia, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821(B); State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So. 2d 654, 660. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438; Duhon, 270 So. 3d at 609-10.

In State ex rel. Elaire v. Blackburn, 424 So. 2d 246, 251 (La. 1982), cert. denied, 461 U.S. 959, 103 S. Ct. 2432, 77 L. Ed. 2d 1318 (1983), the Louisiana Supreme Court recognized the legitimacy of a "compromise verdict," i.e., a legislatively approved responsive verdict that does not fit the evidence, but that (for whatever reason) the jurors deem to be fair, as long as the evidence is sufficient to sustain a conviction for the charged offense. If the defendant timely objects to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict, the court overrules the objection, and the jury returns a verdict of guilty of the responsive offense, the reviewing court must examine the record to determine if the responsive verdict is supported by the evidence and may reverse the conviction if the evidence does not support the verdict. However, if the defendant does not enter an objection (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury.

In this case, there was no objection to the instruction on the responsive verdict of manslaughter. The jury's ultimate reasoning for returning this

7

responsive verdict is unclear, but it is possible that this verdict represented a "compromise." Regardless of the jury's ultimate reasoning, the evidence presented at trial was sufficient to convict the defendant of second degree murder.

**SECOND DEGREE MURDER**

Second degree murder, in pertinent part, "is the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" LSA-R.S. 14:30.1(A)(1). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Such state of mind can be formed in an instant. Specific intent need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Mitchell, 2016-0834 (La. App. 1st Cir. 9/21/17), 231 So. 3d 710, 732, writ denied, 2017-1890 (La. 8/31/18), 251 So. 3d 410.

Any rational trier of fact, viewing the evidence in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of second degree murder and the defendant's identity as the perpetrator of that offense against the victim. The verdict returned in this matter indicates the jury accepted the testimony of the State witnesses while rejecting the defendant's account of the incident.

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's

determination of guilt. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. The fact that the record contains evidence which conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. See State v. Nixon, 2017-1582 (La. App. 1st Cir. 4/13/18), 250 So. 3d 273, 291, writ denied, 2018-0770 (La. 11/14/18), 256 So. 3d 290.

## JUSTIFIABLE HOMICIDE

A homicide is justifiable when committed in self-defense by one who reasonably believes that she is in imminent danger of losing her life or receiving great bodily harm and that the killing is necessary to save herself from that danger. LSA-R.S. 14:20(A)(1). However, a person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless she withdraws from the conflict in good faith and in such a manner that her adversary knows or should know that she desires to withdraw and discontinue the conflict. LSA-R.S. 14:21.

When self-defense is raised as an issue by the defendant, the State has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. The issue is whether or not a rational factfinder, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant did not kill the victim in self-defense. State v. Patorno, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So. 2d 141, 147. Further, when a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So. 2d 676, 680 (La. 1984).

The State argued the defendant acted as the aggressor because she brought a

knife to the fight with the victim. The State urged the jury to reject the defendant's claim of self-defense, noting the defendant stabbed the unarmed victim five times and cut her twice. The State pointed out the defendant inflicted a fatal stab wound to the victim that was two-and-one-half inches deep and traveled through skin, muscle, bone, lung, and into the victim's heart. The State also pointed out that if the defendant's account of the incident had been accurate, "[the defendant would] be full of blood," but she testified she did not change clothes between the stabbing and her interview with the police, and the video of the interview showed no blood on her clothes.

In finding the defendant guilty, the jury rejected the claim of self-defense and concluded that the use of deadly force under the particular facts of this case was neither reasonable nor necessary. It was undisputed that the defendant stabbed the unarmed victim five times and cut her twice, with the fatal wound penetrating the victim's body to a depth of three-and-one-quarter inches and striking her heart. The fact that the defendant stabbed the victim in the chest with a knife indicates a specific intent to kill or to inflict great bodily harm. A rational juror could have reasonably concluded that the killing was not necessary to save the defendant from the danger envisioned by LSA-R.S. 14:20(1) and/or that the defendant had abandoned the role of defender and taken on the role of an aggressor and, as such, was not entitled to claim self-defense. See also State v. Tran, 98-2812 (La. App. 1st Cir. 11/5/99), 743 So. 2d 1275, 1291, writ denied, 99-3380 (La. 5/26/00), 762 So.2d 1101. See LSA-R.S. 14:21.

In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See Ordodi, 946 So. 2d at 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby

10

overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 2007-2306 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam). To otherwise accept a hypothesis of innocence that was not unreasonably rejected by the fact finder, a court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See State v. Mire, 2014-2295 (La. 1/27/16), 269 So. 3d 698, 703 (per curiam).

Having determined that the evidence was sufficient to support the defendant's conviction such that she is not entitled to an acquittal, we next look to the defendant's contention that her conviction based upon a non-unanimous jury verdict is invalid and unconstitutional.

## CONSTITUTIONALITY OF NON-UNANIMOUS VERDICT

In assignment of error number 4, the defendant argues the non-unanimous verdict to convict her of manslaughter violated her rights under the Sixth and Fourteenth Amendments to the United States Constitution.

A written jury poll was conducted in this matter, and the polling results were sealed.[2] See LSA-C.Cr.P. art. 812. The jury voted 11 to 1 to convict the defendant of manslaughter.

In the recent decision of Ramos v. Louisiana, __ U.S. __, ___, 140 S. Ct. 1390, 1397, 206 L. Ed. 2d 583 (2020), the United States Supreme Court overruled Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L. Ed. 2d 184 (1972), and held that the right to a jury trial under the Sixth Amendment of the United States Constitution, incorporated against the States by way of the Fourteenth Amendment of the United States Constitution, requires a unanimous verdict to convict a

---

[2]Following the lodging of the record in this court, this court granted the defendant's motion to supplement the record with the jury polling slips. Thus, the results of the jury poll are part of the record.

11

defendant of a serious offense. The Ramos Court further noted that its ruling applied to those defendants convicted of felonies by nonunanimous verdicts whose cases are still pending on direct appeal.[3] Ramos, 140 S. Ct. at 1406. Thus, where the defendant's conviction was not final when Ramos was decided, the holding of Ramos applies. State v. Bueso, 2019-01675 (La. 6/22/20) ___ So. 3d ___, 2020 WL 3446149 (citing Griffith v. Kentucky, 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649 (1987)).

Accordingly, assignment of error number 4 has merit. The conviction and sentence must be vacated, and this case is remanded to the district court. Our disposition of this assignment of error renders assignments of error numbers 2 and 3 moot.

## CONVICTION AND SENTENCE VACATED; REMANDED.

---

[3]In Crehan v. Louisiana, ___ U.S. ___, ___ S. Ct. ___, ___ L. Ed. 2d ___ (2020), 2020 WL 1978930, Justice Alito concurred in the judgment with the understanding that in cases in which the United States Supreme Court grants, vacates, and remands in light of Ramos, "the [United States Supreme Court] is not deciding or expressing a view on whether the question was properly raised below but is instead leaving that question to be decided on remand." In Crehan, this court noted the defendant made "a pro forma challenge to the constitutionality of his non-unanimous guilty verdict." State v. Crehan, 2018-0746 (La. App. 1st Cir. 11/5/18), 2018 WL 5785479 at *9, (unpublished), writ denied, 2018-2024 (La. 4/15/19), 267 So. 3d 1124. We are aware that a constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the district court below. Vallo v. Gayle Oil Co., Inc., 94-1238 (La. 11/30/94), 646 So. 2d 859, 864-65. Further, while there is no single procedure for attacking the constitutionality of a statute, it has long been held that the unconstitutionality of a statute must be specially pleaded and the grounds for the claim particularized. First, a party must raise the unconstitutionality in the district court; second, the unconstitutionality of a statute must be specially pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized. State v. Hatton, 2007-2377 (La. 7/1/08), 985 So. 2d 709, 719.

In the instant case, the defendant failed to follow the proper procedure for preserving her challenge to the nonunanimous verdict in this matter. However, "[w]hile the general rule is that a litigant cannot raise the unconstitutionality of a statute or ordinance unless its unconstitutionality is specially pleaded and the grounds particularized, several exceptions to this rule have been recognized, including ... where the statute has been declared unconstitutional in another case." See Spooner v. East Baton Rouge Parish Sheriff Department, 2001-2663 (La. App. 1st Cir. 11/8/02), 835 So. 2d 709, 711; see also State v. Smith, 2009-100 (La. App. 5th Cir. 8/25/09), 20 So. 3d 501, 506, writ denied, 2009-2102 (La. 4/5/10), 31 So. 3d 357. Accordingly, in light of the holding in Ramos, this claim is properly before this court.